IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE HUNTINGTON NATIONAL BANK, a National Banking Association, <br><br> Plaintiff <br><br> V. <br><br> SAKTHI AUTOMOTIVE GROUP USA, INC., a Michigan corporation, SAKTHI AMERICA CORPORATION, a Michigan corporation, and SAKTHI REAL ESTATE HOLDINGS, INC., a Michigan corporation, <br><br> Defendants. | Case No. <br><br> Honorable |

## COMPLAINT

NOW COMES The Huntington National Bank, a National Banking Association and successor by merger to FirstMerit Bank, N.A. ("Plaintiff"), by and through its attorneys McDonald Hopkins LLC, and for its complaint against Sakthi Automotive Group USA, Inc. ("SAGUSA"), Sakthi America Corporation ("SAC"), and Sakthi Real Estate Holdings, Inc. ("SREH," and along with SAGUSA and SAC, collectively the "Defendants"), states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a National banking Association with its main office

{7946993:3 }

designated in its articles of association as 41 South High Street, Columbus, Ohio 43287.

2.   SAGUSA is a Michigan corporation with its principal place of business at 6401 W. Fort Street, Detroit, Michigan 48209. Resident agent The Corporation Company, 40600 Ann Arbor Road, E, Suite 201, Plymouth, Michigan 48170.

3.   SAC is a Michigan corporation with its principal place of business at 6401 W. Fort Street, Detroit, Michigan 48209. Registered agent Lalit Kumar, 6401 W. Fort Street, Detroit, Michigan 48209.

4.   SREH is a Michigan corporation with its principal place of business at 6401 W. Fort Street, Detroit, Michigan 48209. Registered agent Lalit Kumar, 6401 W. Fort Street, Detroit, Michigan 48209.

5.   The Court has personal jurisdiction because the Defendants conduct business in the State of Michigan.

6.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (a) a substantial portion of the events and omissions giving rise to the claims arose in this district, and (b) a substantial portion of the property which is the basis for this action is situated in this district. This Court also has original diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that this is a suit between citizens of different States and the amount in controversy

exceeds $75,000.00. In addition, Defendants consented to the jurisdiction of this Court in the Credit Agreement.

## BACKGROUND REGARDING THE LOAN

7. On or about October 30, 2015, Defendants, as borrowers, and Plaintiff, as Lender, executed and delivered that certain Credit and Security Agreement, as the same has been amended and modified from time to time (collectively, the "Credit Agreement").[1] A true and complete copy of the Credit Agreement is attached hereto and incorporated herein as Exhibit A.

8. On October 30, 2015, Defendants also executed a secured Revolving Note (the "Note") in favor of Plaintiff. A true and complete copy of the Note is attached hereto and incorporated herein as Exhibit B.

9. To secure their Obligations under the Credit Agreement, the Note, and the other Loan Documents executed in connection therewith, Defendants granted Plaintiff security interests and liens in certain Collateral (as defined in the Credit Agreement), including, but not limited to: (a) all Accounts; (b) all Inventory; (c) all Equipment, Fixtures and other Goods; (d) all General Intangibles; (e) all Investment Property, including, without limitation, any security, whether certificated or uncertificated; (f) all Deposit Accounts; (g) all Chattel Paper,

---

[1] Capitalized terms appearing herein that are not otherwise defined shall have the meanings ascribed to such terms in the Credit Agreement.

Instruments, and Documents; (h) all Commercial Tort Claims; (i) all books and records (including customer lists, files, correspondence, tapes, computer programs, software, print-outs, and computer records) pertaining to the foregoing; and (j) the products and proceeds of the same (collectively, the "Collateral").

10. UCC-1 financing statements for the Defendants were properly filed with the Michigan Department of State, Uniform Commercial Code Section, on November 2, 2015, respectively. Copies of the filed UCC-1s are attached hereto and incorporated herein as Exhibit C-1, Exhibit C-2, and Exhibit C-3.

11. Plaintiff holds a properly perfected security interest in substantially all of the personal property interests of the Defendants, except for certain Excluded Collateral.

12. To further secure Defendant SAGUSA's Obligations under the Credit Agreement, the Note, and the other Loan Documents executed in connection therewith, SAGUSA granted Plaintiff a Mortgage dated June 13, 2016, on its owned real property located in Wayne County, Michigan, as more fully described on Exhibit A attached thereto. The Mortgage was recorded with the Wayne County Register of Deeds on June 24, 2016. A true and correct copy of the recorded Mortgage is attached hereto and incorporated herein as Exhibit D.

13. To further secure Defendant SAC's Obligations under the Credit Agreement, the Note, and the other Loan Documents executed in connection

therewith, SAC granted Plaintiff a Mortgage dated June 13, 2016, on its owned real property located in Wayne County, Michigan, as more fully described on Exhibit A attached thereto. The Mortgage was recorded with the Wayne County Register of Deeds on June 24, 2016.  A true and correct copy of the recorded Mortgage is attached hereto and incorporated herein as <u>Exhibit E</u>.

14. On February 12, 2019 and on March 15, 2019, respectively, General Motors LLC ("<u>GM</u>") purchased a subordinated, last-out participation in the Credit Agreement and Note. GM will be sent a copy of the Complaint via overnight mail and via email to its counsel.

## **<u>DEFAULT UNDER THE LOAN DOCUMENTS</u>**

15. Various events of default exist and are continuing under the terms of the Credit Agreement and other Loan Documents. On or about March 13, 2019, Plaintiff sent a Notice of Default to the Defendants.  A true and correct copy of the Notice of Default is attached hereto and incorporated herein as <u>Exhibit F</u>. In addition, on March 19, 2019, Lalit Kumar (a Guarantor under Plaintiff's Loan Documents) and Fortress Ventures LLC, filed a lawsuit in The State of Michigan Circuit Court Wayne County Business Court, case number 19-003918-CB, against Defendant SAGUSA and other parties, which constitutes a breach of Section 5.9(b) of the Credit Agreement.

16.  In addition to the above-referenced defaults: (a) the Defendants have generated a significant cash shortfall due to operating losses, which losses are a result of production inefficiencies and expedites freight costs exceeding $9 million; (b) the Defendants' ability to meet daily operating needs, including payroll is uncertain; (c) Plaintiff's line of credit to the Defendants is near the maximum permitted available amount; (d) the Defendants' liquidity is impaired due to an inventory theft, reported in 2018, estimated to exceed $4 million of inventory cost; (e) the Defendants have submitted inaccurate borrowing base certificates to Plaintiff containing ineligible receivables classified as eligible receivables; (f) upon information and belief, one or more Defendants have diverted Plaintiff's cash collateral without Plaintiff's knowledge or consent; and (g) Defendants' liquidity and cash constraints have threatened GM's production on various occasions.

17.  As of March 22, 2019, Defendants owe Plaintiff the aggregate amount of $19,083,295.62, which includes, among other things, principal, interest, default interest, late fees, plus continuing per diem interest in the amount of $3,953.90, and fees and expenses incurred by Plaintiff, in enforcing the Loan Documents and all other amounts due and owing by Defendants under the Loan Documents.

18.  Based upon the occurrence of the defaults, Plaintiff has demanded immediate payment of all Obligations of the Defendants to Plaintiff under the Loan

Documents. The obligation of Plaintiff to make revolving loans to the Defendants is deemed terminated and Plaintiff has the right, but not the obligation, to make additional revolving loans to the Defendants in its sole discretion.

## OTHER SECURED LIENS

19. On or about March 27, 2018, Defendants, Plaintiff, Punjab National Bank (International) Limited, Chase Invest Detroit Fund, LLC, Detroit Investment Fund, L.P., Hitachi Capital America Corp., Bangkok Bank Public Company Limited, and certain other signatory parties (collectively, the "Intercreditor Parties") executed and delivered that certain Fourth Amended and Restated Subordination and Intercreditor Agreement (the "Intercreditor Agreement").  In addition to the security interests and liens granted to Plaintiff by the Defendants, the Defendants also granted junior liens on certain of their personal property assets to Punjab National Bank (International) Limited, Chase Invest Detroit Fund, LLC, Detroit Investment Fund, L.P., Hitachi Capital America Corp., Bangkok Bank Public Company Limited, as more specifically set forth in the Intercreditor Agreement. A true and complete copy of the Intercreditor Agreement is attached hereto and incorporated herein as Exhibit G.

20. Pursuant to the terms of the Intercreditor Agreement, Plaintiff has a first-priority lien on the FM Senior Loan Collateral (as defined in the Intercreditor Agreement).

21. Pursuant to Section 4.1(c) of the Intercreditor Agreement, Plaintiff has the right to exercise any right or remedy under the Loan Documents and/or applicable law without notice to or the approval of the Intercreditor Parties.

22. Punjab National Bank (International) Limited, Chase Invest Detroit Fund, LLC, Detroit Investment Fund, L.P., Hitachi Capital America Corp., and Bangkok Bank Public Company Limited will be sent a copy of the Complaint via overnight mail and via email to their counsel if known.

23. In addition to the foregoing other secured creditors: (a) GM has certain purchase money security interests in and liens on certain specific equipment owned by SAGUSA, which secures loans made by GM to SAGUSA, and (b) Aapico Investments Pte. Ltd. and Aapico Hitech Public Company Limited may have made certain secured junior priority loans to one or more of the Defendants from time to time, but any security interests or liens granted to Aapico Investments Pte. Ltd. and/or Aapico Hitech Public Company Limited on any of the Defendants' personal property are junior in priority to the senior perfected security interests and liens of Plaintiff on the Collateral. GM, Aapico Investments Pte. Ltd., and Aapico Hitech Public Company Limited will be sent a copy of the Complaint via overnight mail and via email to their counsel if known.

## COUNT ONE:
## BREACH OF CONTRACT UNDER THE LOAN DOCUMENTS

24. Plaintiff realleges the allegations of Paragraphs 1 through 23.

25. The Loan Documents, including, without limitation, the Note and Credit Agreement are valid contracts between the Plaintiff and Defendants.

26. Pursuant to the Note and Credit Agreement, the amounts due under the Note are due and owing as a result of the occurrence of certain Events of Default under the terms of the Loan Documents.

27. Defendants have thereby breached the Loan Documents.

28. Pursuant to Article 11 of the Credit Agreement, Plaintiff is entitled to protect and enforce its rights against the Defendants and its Collateral, including, but not limited to, the appointment of a receiver (Section 11.5 of the Credit Agreement), as a matter of strict right, without notice and without regard to the adequacy of the Collateral for security of the amounts owned under the Note and other Loan Documents.

29. As of March 22, 2019, Defendants owe Plaintiff the aggregate amount of $19,083,295.62, which includes, among other things, principal, interest, default interest, late fees, plus continuing per diem interest in the amount of $3,953.90, and fees and expenses incurred by Plaintiff, in enforcing the Loan Documents and all other amounts due and owing by Defendants under the

Loan Documents, including, without limitation, reasonable attorney's fees and expenses, all other Obligations and amounts due and owing by Defendants to Plaintiff under the Loan Documents.

## COUNT TWO:
## APPOINTMENT OF A RECEIVER

30. Plaintiff realleges the allegations of Paragraphs 1 through 29.

31. Defendants have consented to the appointment of a receiver in Section 11.5 of the Credit Agreement.

32. Even if Defendants had not consented to the appointment of a receiver, good cause exists for such appointment.

33. Plaintiff is of the good faith belief that Defendants are without the resources to preserve Collateral as required by the Loan Documents described above, and therefore, the value of Plaintiff's Collateral is jeopardized and in danger of further deterioration.

34. Plaintiff is entitled to have the receiver appointed as a matter of equity to protect it from injury and to ensure that its Collateral is sold or otherwise liquidated and all proceeds are remitted directly to Plaintiff until all Obligations owed to Plaintiff from the Defendants is paid in full.

35. By reason of the foregoing, Plaintiff is at risk of immediate and irreparable injury, loss and damage to its Collateral unless a receiver is appointed

in this case.

36. The financial condition of Defendants and their inability to preserve the Collateral jeopardizes Plaintiff's secured priority position. The appointment of a receiver is necessary to preserve, protect, and maintain the value of Plaintiff's interests in the Collateral and to maximize the value of the Defendants' business operations.

37. Plaintiff requests that the Court enter an order (a) appointing a receiver of the Collateral, together with all of the other real and personal property arising out of, or pertaining to the Defendants' business operations during the pendency of this action and (b) requiring all persons who have possession or control of the Collateral or other real and personal property arising out of, or pertaining to the Defendants' business operations, to yield and deliver possession of the same to the receiver appointed by the Court.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment that:

A. Determines and awards to Plaintiff the amount due to the Plaintiff by Defendants pursuant to the Loan Documents;

B. Awards Plaintiff the amount of $19,083,295.62, plus per diem interest from March 22, 2019 in the amount of $3,953.90, plus attorneys' fees, and

all other accrued amounts under the Loan Documents;

   C. Orders and enjoins Defendants and their agents from damaging, destroying, concealing, disposing of or dissipating the value of the property constituting the Collateral of the Plaintiff;

   D. Orders Plaintiff its costs, including reasonable attorneys' fees and expenses authorized under the Loan Documents;

   E. Orders the immediate appointment of a receiver to take charge of, manage, preserve, protect and oversee the assets and business operations of the Defendants, and to apply the net proceeds derived therefrom to the amounts owed Plaintiff and to other creditors in the proper order of priority of their respective claims based upon applicable law; and

   F. Grants such other relief as this Court deems equitable and just.

Dated: March 27, 2019   Respectfully submitted,

         */s/ Timothy J. Lowe*
         Timothy J. Lowe (P68669)
         Ashley J. Jericho (P72430)
         MCDONALD HOPKINS
         39533 Woodward Ave., Suite 318
         Bloomfield Hills, MI 48304
         Telephone: (248) 220-1359
         Email: tlowe@mcdonaldhopkins.com
            ajericho@mcdonaldhopkins.com

         and

          Scott N. Opincar (0064027)
          McDonald Hopkins LLC
          600 Superior Avenue, East
          Suite 2100
          Cleveland, Ohio 44114
          Telephone: (216) 348-5400
          Email: sopincar@mcdonaldhopkins.com
          (*Admitted to Practice Before This Court*)

          *Attorneys for Plaintiff*