UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL
BANK,

                   Plaintiff,

v.

SAKTHI AUTOMOTIVE GROUP
USA, INC., et al.,

                   Defendants.

_____/

Case No. 2:19-cv-10890

HONORABLE STEPHEN J. MURPHY, III

**ORDER DENYING PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION,
GRANTING PLAINTIFF'S MOTION FOR APPOINTMENT
<u>OF A RECEIVER, [26] AND REQUIRING JOINT STATUS REPORTS</u>**

On April 3, 2019, Plaintiff The Huntington National Bank ("Huntington") filed a motion for preliminary injunction and a renewed motion for appointment of a receiver. ECF 26. The Court conducted a two- and one-half-hour evidentiary hearing on May 14, 2019, and adjourned the hearing until Friday, May 17, 2019. Upon further review, the Court finds that an adjournment of the hearing is unnecessary. The Court will deny Huntington's request for a preliminary injunction and grant its request for appointment of a receiver. Either party may file motions for reconsideration within ten days of this Order if they believe that further evidence would change the Court's present ruling. Any such motion must be accompanied by affidavits, declarations, and a summary of the testimony and evidence that would alter the Court's decision.

## BACKGROUND

Huntington's two-count complaint (1) alleges breach of contract of loan documents and (2) seeks appointment of a receiver. Huntington alleges that on October 30, 2015, Defendants Sakthi Automotive Group, Sakthi America Corporation, and Sakthi Real Estate Holdings, Inc. (hereinafter "Sakthi Defendants") executed a credit and security agreement with Huntington as the lender and also executed a secured revolving note in favor of Huntington. ECF 1. To secure the obligations under the credit agreement, note, and other loan documents, Sakthi Defendants granted Huntington security interests and liens on collateral (as defined in the credit agreement). Huntington claims that it "holds a properly perfected security interest in substantially all of the personal property interests of the Defendants, except for certain Excluded Collateral." *Id*. at 4. Sakthi Automotive Group and Sakthi America Corp. also granted Huntington mortgages to their real property. *Id*. at 4–5. Additionally, Huntington states that "[o]n February 12, 2019 and March 15, 2019, General Motors LLC ("GM") purchased subordinated, last-out participations in the Credit Agreement and Note. GM has purchased a total of $10 million of subordinated participations in Plaintiff's revolving loan facility." ECF 26, PgID 628.

Huntington claims that Sakthi Defendants have defaulted under the terms of the credit agreement and other loan documents and that, as of April 2, 2019, they owe Huntington the aggregate amount of $19,592,928.14, plus continuing per diem interest of $4,080.13. *Id*. at 631.

## DISCUSSION

I.   <u>Plaintiff's Motion for a Preliminary Injunction</u>

Huntington seeks to enjoin Sakthi Defendants from "removing, wasting, destroying, selling, transferring, abandoning, disposing, dissipating, impairing, encumbering, or creating a security interest in the Collateral of Plaintiff outside the ordinary course of business and in accordance with the Loan Documents." ECF 26, PgID 622. The factors the Court balances before entering a preliminary injunction include:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997) (en banc)).

Huntington has demonstrated a strong likelihood of success on the merits. Huntington lists multiple alleged instances of default under the loan documents. *See* ECF 26, PgID 628–31. And Sakthi Defendants "do not dispute that some events of default exist." ECF 30, PgID 1522. Huntington also elicited testimony at the evidentiary hearing, subject to cross-examination, that demonstrated multiple instances of default under the parties' loan documents. Thus, the first preliminary injunction factor weighs in Huntington's favor.

Although Huntington can demonstrate likelihood of success on the merits, it cannot demonstrate that it will suffer irreparable injury in the absence of a

preliminary injunction. The parties' briefing and the testimony of Huntington's senior vice president, Barry O'Neall, confirm that Huntington's alleged injury is fully compensable by money damages. And "a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *see also Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). "The failure to show irreparable harm, by itself, can justify the denial of preliminary injunctive relief without consideration of the other three factors." *Essroc Cement Corp. v. CPRIN, Inc.*, 593 F. Supp. 2d 962, 970 (W.D. Mich. 2008) (citing *Hacker v. Fed. BOP*, No. 06-12425-BC, 2006 WL 2559792, at *8 (E.D. Mich. Sept. 1, 2006)).

The remaining preliminary injunction factors do not weigh strongly in favor of either party. As to potential for substantial harm to others if an injunction were to issue, Huntington asserts that no harm would come from requiring Sakthi Defendants to comply with the terms of their contractual agreements. Sakthi Defendants counter that "the proposed injunctive order would interfere with Sakthi USA's efforts to secure alternative financing and repay Huntington." ECF 30, PgID 1520. The factor would nevertheless appear to weigh in favor of Huntington, because Sakthi Defendants provide no evidence regarding their alternative financing arrangements.

The parties do not address the final factor, public interest, with any depth. As a contractual dispute between private parties, the public interest does not appear to be significantly implicated here.

After balancing the relevant factors, the Court finds that a preliminary injunction is not warranted and will deny Huntington's motion for a preliminary injunction. The Court notes, however, that the relief Huntington ultimately seeks via a preliminary injunction—security of the Collateral—can be achieved via the appointment of a receiver. The appointment of a receiver is a remedy provided for by the parties' contractual agreements and is legally justified.

II.   Plaintiff's Motion to Appoint a Receiver

Huntington requests a receiver "be appointed to take custody, control and possession of the Defendants' Collateral, which includes Defendants' personal property (tangible and intangible) and real property, and its business operations, pursuant to § 11.5 of the Credit Agreement." ECF 26, PgID 622. The parties' briefing and evidence, including relevant contractual language in the parties' loan documents, establish that Huntington is entitled to the appointment of a receiver.

Section 11.5 of the parties' credit agreement provides as follows:

Upon the occurrence of an Event of Default and at all times thereafter, the Lender shall be entitled to the immediate appointment of a receiver for all or any part of the Collateral, whether such receivership is incidental to the proposed sale of the Collateral, pursuant to the Uniform Commercial Code or otherwise. Each Loan Party hereby consents to the appointment of such a receiver without notice or bond, to the full extent permitted by applicable statute or law; and waives any and all notices of and defenses to such appointment and agrees not to oppose any application therefor by the Lender, but nothing herein is to be construed to deprive the lender of any other right, remedy, or privilege the Lender may have under law to have a receiver appointed, provided, however, that, the appointment of such receiver shall not impair or in any manner prejudice the rights of the Lender to receive any payments provided for herein. Such receivership shall at the option of the Lender, continue until full payment of all the Obligations.

ECF 26-5, PgID 760. The mortgage agreements between Huntington and Sakthi America Corporation and Sakthi Automotive Group USA, Inc. contain similar clauses. *See* ECF 26-8, PgID 946, ¶7(d); ECF 26-9, PgID 976, ¶7(d). Huntington has established, and Sakthi Defendants conceded, that at least one event of default has occurred. The contract's unambiguous terms therefore entitle Huntington to appointment of a receiver.

Additionally, relevant case law supports Huntington's request for a receiver. *See Meyer Jewelry Co. v. Meyer Holdings, Inc.,* 906 F. Supp. 428, 432 (E.D. Mich. 1995); *Steinberg v. Young,* 641 F. Supp. 2d 637 (E.D. Mich. 2009); *Aviation Supply v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 315 (8th Cir. 1993). Factors considered by the Court in *Meyer* include:

> [1] the existence of a valid claim by the moving party; [2] the probability that fraudulent conduct has occurred or will occur to frustrate the claim; [3] imminent danger that property will be lost, concealed, or diminished in value; [4] inadequacy of legal remedies; [5] lack of a less drastic equitable remedy; and [6] the likelihood that appointment of a receiver will do more harm than good.

*Meyer Jewelry Co.*, 906 F. Supp. at 432.

First, Huntington has established the existence of a valid claim, as discussed above. Second, as to the probability that fraudulent conduct has occurred, Huntington claims, among other things, that Sakthi Defendants have "egregiously included ineligible Accounts as Eligible Accounts . . . and have borrowed funds from Plaintiff in connection [with] such ineligible accounts in breach of the Credit Agreement." ECF 26, PgID 641. Sakthi Defendants have also allegedly "diverted Plaintiff's cash collateral in connection with certain rental payments from MOBIS in the amount of

$110,352.13 per month, for the last four months." *Id.* at 641–42. Sakthi Defendants do not provide any evidence to the contrary.

Third, Huntington claims that "Defendants are expected to run out of money shortly unless a receiver is appointed and the proposed new financing facility to the receiver is approved by the Court." *Id.* at 625. The declaration of GM's director of supplier financial risk mitigation, Mark Fischer, supports that contention. *See* ECF 45-1.

The fourth and fifth factors, inadequacy of legal remedies and lack of a less drastic equitable remedy have little relevance in light of the parties' contractual agreement. *See, e.g.*, ECF 26-8, PgID 946, ¶7(d) ("To the extent permitted by law, Mortgagee shall be entitled to the appointment of a receiver of the Mortgaged Property as a matter of right . . . regardless of whether Mortgagee has an adequate remedy at law"); ECF 26-9, PgID 976, ¶7(d) (same).

As to the sixth and final factor, Sakthi Defendants argue that appointment of a receiver will do more harm than good, but they offer no evidence to establish the truth of their contention. For example, Sakthi Defendants submit that they are negotiating a credit facility to replace Huntington but have not provided documentary evidence of any sort that a new source of credit has been established or that appointment of a receiver in the interim would terminate the proposed financing agreement. *See, e.g.*, ECF 30, PgID 1507 (claiming "Defendants' financial conditions are . . . improving" and that Defendants are "actively negotiating a credit facility to replace Huntington"). Arguments of counsel are not evidence. And Sakthi

Defendants' submission that they will be harmed by the appointment of a receiver is speculative.

The Court will grant Huntington's renewed motion to appoint a receiver. The Court will require more information from the parties, as described below, before selecting an individual to fill the role of receiver.

III.   <u>Joint Status Reports</u>

Finally, to assist the Court in naming an appropriate receiver, the parties shall file a joint status report identifying a receiver who they agree is qualified and appropriate for the case. If the parties cannot agree on a receiver, they will identify the names of the receivers they discussed and the objecting party's reasons for opposing each receiver. The parties will also address the proposed powers of the receiver, stipulate to any agreed-upon powers, and identify why an objecting party opposes certain powers.

The parties must explain why the receiver should not also serve as a special master, or why a separate special master should not be appointed. The evidentiary hearing revealed much in the way of disputed business strategies and little in the way of legal argument. Accordingly, as it stated on the record, the Court believes the instant dispute to be mainly of a business nature and not entirely a legal one.

Additionally, the parties must submit a joint status report explaining in detail any circumstances that will terminate the case. In particular, the parties must detail any agreements that may resolve the litigation through investment of funds, payments of loans, or otherwise.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's motion for a preliminary injunction [26] is **DENIED** and Plaintiff's renewed motion for appointment of a receiver [26] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall **FILE** a joint status report on a potential receiver, as described above, no later than **Monday, May 20 at 5:00 p.m.**

**IT IS FURTHER ORDERED** that the parties shall **FILE** another joint status report on any circumstances, agreements, or other events that may affect the pendency of the case no later than **Tuesday, May 21 at 5:00 p.m.**

**SO ORDERED**.


s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: May 16, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 16, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager