UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL
BANK,

        Plaintiff,

v.

SAKTHI AUTOMOTIVE GROUP
USA, INC., et al.,

        Defendants.
                            /

Case No. 2:19-cv-10890

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING DEFENDANTS' EX PARTE MOTION TO DELAY THE APPOINTMENT OF A RECEIVER [51], DENYING DEFENDANTS' MOTION FOR RECONSIDERATION [56], [57], AND DENYING PLAINTIFF'S MOTION TO FILE A RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION [61]**

On May 16, 2019, the Court denied Plaintiff Huntington National Bank's ("Huntington") motion for a preliminary injunction and granted its renewed motion for appointment of a receiver. ECF 49. The Court allowed either party to file motions for reconsideration within ten days if they believed that further evidence could change the Court's ruling. *Id.* at 2484. The Court further ordered that "[a]ny such motion must be accompanied by affidavits, declarations, and a summary of the testimony and evidence that would alter the Court's decision." *Id.* On May 20, 2019, Defendants Sakthi Automotive Group, USA, Inc., Sakthi America Corporation, and Sakthi Real Estate Holdings ("Sakthi Defendants") filed an ex parte motion to delay appointment of a receiver until after the Court considered Sakthi Defendants' motion for reconsideration. ECF 51. On May 21, 2019, Sakthi Defendants filed a motion for

1

reconsideration. ECF 56, 57. On May 28, 2019, Huntington filed a motion for leave to file a response in opposition to Sakthi Defendants' motion for reconsideration. ECF 61. For the reasons that follow, the Court will deny each of these motions and will appoint by separate order Kevin English, managing partner of Lark Advisors, to serve as receiver. *See* ECF 52, PgID 2514–15.

## STANDARD OF REVIEW

Before the Court will grant a motion for reconsideration, "[t]he movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001) (citation omitted).

## DISCUSSION

As the Court found in its Order granting Huntington's renewed motion for a receiver, "the parties' briefing and evidence, including relevant contractual language in the parties' loan documents, establish that Huntington is entitled to the appointment of a receiver." ECF 49, PgID 2488. Sakthi Defendants admitted that they are in default of the parties' loan agreements. ECF 30, PgID 1522. And Huntington, consistent with the terms of the parties' contracts, sought to have a receiver appointed to protect its interests in certain collateral. *See* ECF 26-5, PgID 760, ECF 26-8, PgID 946, ¶ 7(d); ECF 26-9, PgID 976 ¶ 7(d).

Section 11.5 of the parties' credit agreement provides:

> Upon the occurrence of an Event of Default and at all times thereafter, the Lender shall be entitled to the immediate appointment of a receiver for all or any part of the Collateral, whether such receivership is incidental to the proposed sale of the Collateral, pursuant to the Uniform Commercial Code or otherwise. Each Loan Party hereby consents to the appointment of such a receiver without notice or bond, to the full extent permitted by applicable statute or law; and waives any and all notices of and defenses to such appointment and agrees not to oppose any application therefor by the Lender, but nothing herein is to be construed to deprive the lender of any other right, remedy, or privilege the Lender may have under law to have a receiver appointed, provided, however, that, the appointment of such receiver shall not impair or in any manner prejudice the rights of the Lender to receive any payments provided for herein. Such receivership shall at the option of the Lender, continue until full payment of all the Obligations.

ECF 26-5, PgID 760. The mortgage agreements between Huntington and Sakthi America Corporation and Sakthi Automotive Group USA, Inc. contain similar clauses. *See* ECF 26-8, PgID 946, ¶7(d); ECF 26-9, PgID 976, ¶7(d).

Defendants do not dispute the validity of the contracts or that they have defaulted under the terms of the contracts. Appointment of a receiver is "an extraordinary equitable remedy that is justified in only extreme situations." *Meyer Jewelry Co. v. Meyer Holdings*, 906 F. Supp. 428, 432 (E.D. Mich. 1995) (citations omitted)[1]. Here, it is a remedy that Sakthi Defendants explicitly agreed to in their contracts with Huntington. Courts disagree about whether a party's advanced contractual consent to the appointment of a receiver is dispositive of the issue of

---

[1] "[T]he weight of authority suggests that appointment of a receiver in a diversity action is controlled by federal law, not state law." *Fed. Nat. Mortg. Ass'n v. Mapletree Inv'rs Ltd. P'ship*, No. 10-cv-10381, 2010 WL 1753112, at *2 (E.D. Mich. Apr. 30, 2010) (collecting cases). The parties agree that the controlling authority is federal law. *See, e.g.*, ECF 26, PgID 626; ECF 29, PgID 1046.

3

appointment or simply a factor that favors appointment. *Mapletree*, 2010 WL 1753112, at *3. Under either scenario, Huntington is entitled to appointment of a receiver. As discussed in the Court's order granting Huntington's renewed motion for appointment of a receiver, the relevant legal and equitable factors clearly favor appointment of a receiver here. *See* ECF 49, PgID 2488–91.

Sakthi Defendants focus on the phrase "to the full extent permitted by applicable statute or law" contained in Section 11.5 of the parties' contract and argue that case law does not support appointment of a receiver. The argument is unavailing. The Court fully considered the following factors that were discussed in *Meyer*:

> [1] the existence of a valid claim by the moving party; [2] the probability that fraudulent conduct has occurred or will occur to frustrate the claim; [3] imminent danger that property will be lost, concealed, or diminished in value; [4] inadequacy of legal remedies; [5] lack of a less drastic equitable remedy; and [6] the likelihood that appointment of a receiver will do more harm than good.

ECF 49, PgID 2489 (quoting *Meyer Jewelry Co.*, 906 F. Supp. at 432); *see also Pension Benefit Guar. Corp. v. Evans Tempcon. Inc.*, 630 F. App'x 410, 414 (6th Cir. 2015) (discussing factors a district court considers when appointing a receiver). The Court found, based not only on the testimony provided at the evidentiary hearing, but also on the arguments and evidence contained in the parties' filings, that the factors favored appointment of a receiver. ECF 49, PgID 2489–91. And Sakthi Defendants have failed to provide evidence in their motion for reconsideration that warrants a different ruling.

Defendants' motion for reconsideration focuses on three of the factors previously evaluated by the Court: "(a) the probability that fraudulent conduct has

4

occurred or will occur; (b) imminent danger that property will be lost, concealed, or diminished in value; and (c) the likelihood that the appointment of a receiver will do more harm than good." ECF 56, PgID 2623. The evidence Sakthi Defendants submitted fails to establish that these factors weigh in their favor or that appointment of a receiver is not otherwise "permitted by applicable statute or law" as described in the parties' contract. ECF 26-5, PgID 760. Consequently, Sakthi Defendants' motion for reconsideration will be denied.

(1) <u>Probability of Fraudulent Conduct</u>

First, Defendants argue that they have not committed fraud. ECF 56. They rely upon the declarations of Manickam Mahalingam, the Chairman of Sakthi Defendants, ECF 60, PgID 3067–77, and Nalin Chaudhry, a financial consultant to Sakthi Automotive Group, USA, Inc. and its former Chief Financial Officer, ECF 57-3, PgID 3043–47. Chaudhry claims that the testimony provided at the evidentiary hearing by Huntington's witness, Barry O' Neall, was "inaccurate, misleading and omitted important facts." *Id.* at 3044. In particular, although MOBIS rental payments were "an 'ineligible' account receivable that should not have been included in the 'total accounts receivable' . . . [t]here was no attempt to conceal this information from [Huntington]." *Id.* at 3045. Similarly, Mr. Mahalingam asserts that Huntington has "[a]t all relevant times . . . been aware of Sakthi's 'diversion' of the MOBIS rent payments to [Punjab National Bank]." ECF 60, PgID 3069. Sakthi Defendants further assert that they submitted corrected borrowing base accounts to correct errors

5

regarding inclusion of ineligible accounts and that there was no fraud involved, only mistake. ECF 56, PgID 2638. The Court will accept the assertions as true.

But now Huntington and Sakthi Defendants have submitted competing evidence regarding the probability that fraudulent conduct has occurred or will occur. And although Sakthi Defendants' new evidence creates doubt that Sakthi Defendants had fraudulent intent when they provided erroneous records to Huntington, the doubt is insufficient to tip the scales in Sakthi Defendants' favor regarding the appointment of a receiver. *See Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 847 (9th Cir. 2009) (holding that "district courts have broad discretion to consider a number of factors in considering whether or not to appoint a receiver, and that no one factor is dispositive"). Sakthi Defendants' proffered evidence does not show that the Court committed an error which is "obvious, clear, unmistakable, manifest, or plain." *See Fleck*, 177 F. Supp.2d at 624. The new evidence fails to show that appointment of a receiver would not be "permitted by applicable statute or law." ECF 26-5, PgID 760. The balance of the relevant factors still favors appointment of a receiver.

(2) <u>Imminent Danger Property Will be Lost, Concealed, or Diminished in Value</u>

Defendants next argue that even if they "run out of money tomorrow, there is no imminent danger the property will be lost, concealed, or diminished in value." ECF 56, PgID 2640. Sakthi Defendants submit that Huntington's interest in Defendants' existing accounts and inventory is sufficient to cover Defendants' debt to Huntington. *Id*. at 2640. Defendants state that"[Huntington] has a first *or second priority* lien on nearly all of Defendants' equipment, as well as liens of varying priority on all of

6

Defendants' real estate." *Id*. (emphasis added). The argument appears to be, not that property will not diminish in value, but that it will not diminish to the point that Huntington's interest will be harmed. Sakthi Defendants have not provided any new evidence regarding the factor and their argument is unpersuasive.

Mr. O'Neall testified that Huntington's "principal collateral that [it] advance[s] money against are accounts receivables and inventory, and that is the collateral that we are concerned with being diminished as well as the ability for the company to continue to operate." ECF 47, PgID 2434. He further testified that he believed "an infusion of cash into Sakthi Automotive Group USA is required for it to remain a [going] concern," that other creditors were first in priority with regard to mortgage interests in certain real estate collateral, and that Defendants have received default notices for other loans they have taken including from Hitachi Capital Corporation, Chase Investment Fund, Detroit Investment Fund and Huntington Equipment Finance. *Id*. at 2426, 2435–39.

Huntington is rightly concerned that its interest may be imperiled by Sakthi Defendants' inability to continue financing its operations and the presence of multiple other creditors, some of whom have claims that outrank Huntington in order of priority. *See, e.g.*, ECF 31, PgID 1938 ("Faced with a liquidity crisis in September 2018, Mr. [Mahalingam] requested financing from AAPICO, to which AAPICO responded with a loan and investment of $65 million."); ECF 36, PgID 1956 ("The present amount owed to Bangkok Bank is in excess of $20,970,000 plus interest, costs and fees."); ECF 36-5, PgID 2144–45 (describing Bangkok Bank's first priority

7

security interests); ECF 39, PgID 2169–70 (explaining that loans from Detroit Investment Fund, L.P. and Chase Invest Detroit, LLC "are currently in default" and "[e]ach of the respective loans has a current balance of $2,068,451"); ECF 44, PgID 2199–01 (describing Punjab National Bank's first-priority security interests and stating that "[t]he present amount owed to Punjab is in excess of $4,000,000 plus interest, costs and fees"); ECF 45-1, PgID 2366 (Director of Supplier Financial Risk Mitigation for General Motors LLC, Mark Fischer, stating "through June 30, 2019, Sakthi needs at least an additional $12.5 million in financing and an additional $12.5 million to pay their 'inter-company balances' per Sakthi's 13-week cash forecast, in addition to $9.7 million due to GM pursuant to the terms of various loans and agreements between GM and Sakthi"); ECF 60, PgID 3317 (noting costs and expenses incurred by GM related to Sakthi "are in excess of $33 million").

Sakthi Defendants also note that the parties' credit agreement "provides [Huntington] with the right to take possession of and liquidate Defendants' property while Defendants are in default, regardless of whether a receiver is appointed." ECF 56, PgID 2640. It is difficult to see how such an outcome would be preferable, or less extreme, than appointing a receiver. Sakthi Defendants do not address the point. *See Liberte Capital Grp., LLC v. Capwell*, 462 F.3d 543, 551 (6th Cir. 2006) ("The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary."). Sakthi Defendants do not suggest a legal remedy other than appointment of a receiver that

would preserve the collateral in which Huntington has an interest. Sakthi Defendants' evidence related to the diminished value of Huntington's interest fails to demonstrate that the Court was "misled" by a "palpable defect." E.D. Mich. LR 7.1(h)(3).

(3) <u>Likelihood Appointment of a Receiver Will do More Harm than Good</u>

Next Sakthi Defendants argue that appointment of a receiver will do more harm than good because "it will trigger the contractual right for SAGUSA's suppliers and customers to terminate their supply agreements." ECF 56, PgID 2634. Mr. Mahalingam states that "should a receiver be appointed, at least two key suppliers, Bethel-Sakthi and Rio Tinto, have warned that they will terminate or have the right to terminate their supply relationship with Sakthi." ECF 60, PgID 3075. But the May 15, 2019 email from Xiangjun Wu, sales manager for Weihai Bethel-Sakthi Automotive Safety Systems, Ltd. ("Bethel-Sakthi") expressed concern primarily regarding the amount of Defendants' outstanding debt and overdue payments. *See id.* at 3319. Mr. Wu states that "Sakthi Automotive Group USA Inc., still ha[s] a significant amount of overdue payment to Bethel-Sakthi and in the event [a] receiver [is] assigned by the court all the payment overdue to Bethel-Sakthi will be in serious risk." *Id.* According to Huntington's witness, Mr. O'Neall, as of May 14, 2019, Defendants owed Bethel-Sakthi Automotive more than $12 million with $12.6 million over 90 days past due. ECF 47, PgID 2432. Mr. O'Neall further testified that, as of May 14, 2019, Defendants have significant amounts owed and past due to multiple key suppliers including Rio Tinto to whom Defendants owe $3.5 million with $2

9

million more than 90 days past due. *Id.* at 2431–32. Thus, it appears that Sakthi Defendants' failure to pay their debts is causing more concern among their suppliers and customers than the potential appointment of a receiver.

Sakthi Defendants' contention that appointment of a receiver will cause their suppliers and customers to cancel their agreements ignores the critical fact that Sakthi Defendants' failure to fulfill contractual obligations, including timely paying its debts, is the primary reason their customers have provided for canceling their agreements. For example, Mr. Mahalingam states that GM has provided notice that it was terminating several supply contracts and "[o]ne of the reasons cited for termination was this Court's May 16 Order granting [Huntington's] motion to appoint a receiver and GM's view that Sakthi is insolvent." ECF 60, PgID 3074–75. But the May 20, 2019 emailed letter from Thomas McMillen, Executive Director of General Motors LLC, states that GM's notice of termination is "a result of Sakthi's material breaches of the Purchase Contracts and Sakthi's insolvency." *Id.* at 3314. Under the title "Termination for Cause," GM's representative explains that "[i]t is clear that Sakthi is insolvent, lacks a plan to address its financial distress, and has insufficient resources to invest in, maintain and operate its business." *Id.* Additionally, Mr. McMillen states "as outlined in various oral and written communications from GM to Sakthi, Sakthi has been, and continues to be, in material breach of the Purchase Contracts (and all other supply agreements with GM)." *Id.*

The reasons GM provides for terminating its purchase contracts is that "Sakthi has repeatedly breached the purchase contracts" and "has failed to provide adequate

assurance of future performance" and is insolvent. *Id*. at 3315–17. Sakthi Defendants' conduct has led to suppliers and customers terminating or potentially terminating their agreements – not the Court's appointment Order. Additionally, GM's purchase contract with Sakthi provides that it "may immediately terminate" its contract without liability in the event of "insolvency of Seller (including, without limitation, a circumstance in which [Sakthi's] liabilities exceed its assets or [Sakthi] is unable to pay its debts as they come due." ECF 60, PgID 3305. It is clear from Huntington's evidence, and the filings of multiple interested parties, that Sakthi Defendants are unable to pay their debts as they come due. That fact strongly favors the appointment of a receiver. *Pension Benefit Guar. Corp.,* 630 F. App'x at 414–15 ("[W]hether there is inadequate security of a debt and whether a debtor is insolvent" are factors the court considers in determining whether a receiver should be appointed.); *Fed. Nat'l Mortg. Ass'n v. Maple Creek Gardens, LLC*, No. 09–14703, 2010 WL 374033, at *3 (E.D. Mich. Jan. 25, 2010) ("Courts contemplating the appointment of a receiver have considered a number of factors but have found the adequacy of the security and the financial position of the [defendant] to be most important."); *Mapletree*, 2010 WL 1753112, at *5 (noting "the two most important factors" in determining whether a receiver should be appointed are "adequacy of the security and financial condition of the [Defendant]").

Finally, based on the arguments and evidence presented, Huntington will likely suffer greater harm if a receiver is denied than Sakthi Defendants will if a receiver is appointed. The fact that Sakthi Defendants contractually agreed to the

11

appointment of a receiver underscores that point. *Id.* (explaining that when a party contractually "agreed to not contest receivership appointment . . . there is little harm in enforcing the terms of the parties' bargain."); *Fed. Nat'l Mortg. Ass'n,* 2010 WL 374033, at *3 (same).

Sakthi Defendants' motion for reconsideration fails to demonstrate that the appointment of a receiver will do more harm than good or that the Court was misled by a palpable defect in deciding to appoint a receiver. Rather, it appears that the appointment of a receiver is the only option that will allow Huntington to protect its interests while still allowing Sakthi Defendants' operations to continue. The balance of the relevant factors favors appointment of a receiver.

## CONCLUSION

The arguments and evidence submitted, including the parties' relevant contract language, confirm that Huntington is entitled to the appointment of a receiver. Huntington has demonstrated that Sakthi Defendants are in breach of the parties' agreements, that its collateral is in danger of being diminished in value, and that appointment of a receiver is necessary to protect Huntington's interests in the collateral covered by the parties' loan agreements. Further, appointment of a receiver will do more good than harm. Sakthi Defendants have failed to show that the appointment of a receiver is not "permitted by applicable statute or law," *see* ECF 26-5, PgID 760, or that appointment of a receiver would be otherwise unjust. And they have failed to show that the Court's decision to appoint a receiver resulted from it

being misled by a palpable defect. Accordingly, Defendants' motion for reconsideration will be denied.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for reconsideration [56], [57] is **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' ex parte motion to delay appointment of a receiver [51] and Plaintiff's motion to file a response to Defendants' motion for reconsideration [61] are **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that the Court will appoint Kevin English to serve as a receiver and will set forth the receiver's powers and responsibilities in a separate order.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 20, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 20, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

13