UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL
BANK,                                    Case No. 2:19-cv-10890

        Plaintiff,                        HONORABLE STEPHEN J. MURPHY, III

v.

SAKTHI AUTOMOTIVE GROUP
USA, INC., et al.,

        Defendants.
_____/

## ORDER APPOINTING RECEIVER

The Court has jurisdiction over this matter. Having thoroughly reviewed the evidence and arguments presented by all parties, the Court now appoints Kevin English as the Receiver and defines the scope of his authority as follows:

Kevin English, managing partner of Lark Advisors, is appointed as the Receiver. Mr. English is qualified to act as the Receiver in this action to take possession, custody, and control of the Defendants' Collateral, as defined in the Credit Agreement to include all personal property, both tangible and intangible, including: (a) all Accounts; (b) all Inventory; (c) all Equipment, Fixtures and other Goods; (d) all General Intangibles; (e) all Investment Property, including, without limitation, any security, whether certificated or uncertificated; (f) all Deposit Accounts; (g) all Chattel Paper, Instruments, and Documents; (h) all Commercial Tort Claims; (i) all books and records (including customer lists, files, correspondence, tapes, computer programs, software, print-outs, and computer records) pertaining to the foregoing; and (j) the

1

products and proceeds of the same, together with all real property owned or leased by the Defendants, and any and all claims and causes of action of the Defendants (collectively, the "Receivership Assets")[1].

The Receiver shall also act as a special master and shall have the power to ensure that judicial orders are followed, to make recommendations to the Court, and to assist in resolution of disputes between the parties.

### 1. Receiver's Oath and Bond

Before performing his duties, the Receiver shall execute a receiver's oath. Within three days of his appointment, the Receiver shall also post a bond from an insurer in the sum of $100,000.00, conditioned upon the faithful performance of the Receiver's duties. The cost of the bond shall be an expense of the receivership, for which the Receiver shall be reimbursed in accordance with the terms of this Order. The Receiver's bond and oath may be filed by electronic transmission and this Order shall become effective upon the Court's receipt of such electronic transmission; provided, however, the Receiver shall replace the copy with an original within seven days of filing.

---

[1] The Receivership Assets exclude all rents and related income which Punjab National Bank (International) Limited ("Punjab") is entitled to receive under a June 13, 2016 Amended and Restated Assignment of Rents and Leases, related security and mortgage documents, a March 27, 2018 Fourth Amended and Restated Subordination and Intercreditor Agreement, and applicable state law. (collectively, the "Punjab Rents"). In addition, for clarity, Receivership Assets do not include property owned by Ford Motor Company ("Ford") (subject to a process for resolving disputes, if any, agreed to by Receiver and Ford, or by Court interpretation) bailed to any Defendants pursuant to the terms of the Ford Production Purchasing Terms and Conditions and related purchase orders (the "Ford Contracts").

Within 10 days after the entry of this Order, pursuant to 28 U.S.C. § 754, the Receiver shall file a copy of the Complaint and a copy of this Order in the district court for each district in which the Receivership Assets are located.

The Receiver shall conduct his activities pursuant to this Order subject to the supervision of the Court. The Receiver and the parties to this action may at any time apply to this Court for further authority or instructions to enable the Receiver to accomplish the purposes of his Receivership.

**2. Receiver's Fees and Expense**

Subject to the Fee Budget (defined below), the Receiver shall be entitled to pay himself and his Professionals (as defined below), subject to Paragraph 6 herein, professional fees earned by the Receiver. All fees and expenses incurred by the Receiver that pertain solely to the Receiver's general office administration and/or overhead, including, but not limited to office supplies, employee wages, taxes and benefits, and other charges shall not be paid by the Receivership Estate unless incurred directly and solely for the benefit of the Receivership Estate. All photocopies and facsimile charges along with necessary out-of-pocket expenses (including travel and lodging) will be billed at cost. All fees and expenses of the Receiver and his Professionals (as defined below) (the "Administrative Expenses") shall be accounted for in the Monthly Financial Report (as defined below). Unless approved by a subsequent order of the Court, the Receiver shall file with the Court a budget setting forth the proposed Administrative Fees (the "Fee Budget") to be incurred by the Receivership Estate within 10 business days of this Order being effective, and the

3

Receiver shall update the Fee Budget within 5 business days following the Receiver's engagement of any Professional (defined below). The Fee Budget shall be subject to Court approval.

The Receiver may seek Court approval to employ a financial consultant (the "Financial Consultant") to assist the Receiver in the performance of his duties as Receiver.

Subject to the approval of the Court, the Receiver may employ a consultant to assist in the marketing process, as detailed in Paragraph 3 below, to assist the Receiver in the performance of his duties as Receiver.

Subject to Court approval, the Receiver shall also have the power to employ and/or contract with professionals and others, including but not limited to counsel, accountants, brokers, assistants, agents, private investigators, advisors, realty professionals, and other third-parties (collectively with the Financial Consultant and consultant to assist in the marketing process, the "Professionals") as he deems necessary to carry out his duties.

The Administrative Expenses shall be an administrative claim against the Receivership Assets and entitled to priority over any and all secured, priority, and unsecured claims, subject to the Fee Budget. To the extent that any claims of secured creditors having liens on any of the Receivership Assets are sought to be surcharged to pay any Court approved Administrative Expenses, at the conclusion of the case, there shall be a "true-up" such that each first-priority secured creditor shall be surcharged to the same percentage of its claim against the Defendants for the

4

payment of Administrative Expenses. To the extent that proceeds from the Receivership Assets or cash generated from business operations are sufficient to pay first-priority secured claims in full, such "true-up" shall be determined based on the priority of any remaining secured claims.

The Receiver may, from time to time, make payments to creditors on account of pre-receivership claims, especially to secured creditors, according to their respective orders of priority, subject to the terms of this Order and any subsequent order entered by the Court.

The Receiver is authorized to borrow money pursuant to the terms of the Plaintiff's Loan Documents (the term "Loan Documents" used in this Order shall have the same meaning and definition provided for in the Credit Agreement dated October 30, 2015). The Receiver is only authorized and permitted to borrow, and the Lenders under Plaintiff's Credit Agreement may in their sole discretion lend to the Receiver, pursuant to and in accordance with the terms of the Credit Agreement (including, without limitation, the Borrowing Base) and other Loan Documents. The Lenders under Plaintiff's Credit Agreement are granted the same liens on the Receivership Assets with the same lien priority and other adequate protections set forth in the Loan Documents to secure such post-receivership loans to the Receiver. Except as expressly modified herein, the Credit Agreement and other Loan Documents remain in full force and effect in accordance with their terms.

Nothing in this Order shall be interpreted as requiring Plaintiff to continue to extend credit to the Receivership Estates and Plaintiff shall continue to have all

rights and remedies to which it is entitled under its Loan Documents with the Defendants.

### 3. Receiver's Powers

The Receiver shall take immediate and exclusive possession, custody and control over all of the Receivership Assets, subject to validly existing liens and security interests (including without limitation, valid Ford setoff and recoupment interests), mortgages, leases, and/or rental agreements, including, but not limited to, the real and personal property relating to the Defendants' business operations and all monies therefrom, all fixtures, inventories, accounting books, records of whatever nature and wherever located, all assets, receivables, accounts, deposits and profits, whether in the possession of the Defendants or any other person. In the event the Receiver comes into possession of any Punjab Rents, the Receiver must promptly turn them over to Punjab. The Receiver shall be granted the powers and authority usually held by receivers and reasonably necessary to accomplish the purposes of the Receivership, which powers the Receiver may delegate in his discretion pursuant to this Order or otherwise, including, but not limited to the power to:

a)  enter upon and take immediate possession of the Receivership Assets, including leasehold interests, and to keep, preserve, maintain, and operate the Facilities and the Defendants' business operations, including changing any and all locks and limiting access to the Defendants' real property if necessary to protect the Receivership Assets;

b)  assume responsibility over the Defendants' business operations during the pendency of the receivership;

c)  collect the earnings, income, receipts, accounts receivable, revenues, issues, and profits which are now or hereafter may be due from the operation of any business connected with the Receivership Assets and improvements thereon;

d)  hire, employ, lease and/or discharge agents, servants, and employees of the Defendants in the operating and maintenance of the Receivership Assets, *provided*, *however*, the Receiver must comply with any collective bargaining agreement that Defendants are a party to (each a "CBA"), including, without limitation, the CBA between Defendants and The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America. Specifically, the Receiver is authorized to retain existing employees of each Defendant and its related parties to continue any business operations. In such cases, the Receiver shall pay all payroll taxes, workers' compensation insurance, and related costs, but such payroll taxes, workers' compensation insurance, and related costs will be carried and reported as those of the applicable Defendant, and not of the Receivership Estate. Subject to any CBA, the Receiver may, in the alternative and at his sole discretion, carry all employees as those of any other entity hired by the Receiver. To the extent the Receiver decides to continue the services of any current employees, agents, or other personnel with respect to the Receivership Assets, neither the Receiver nor any person or entity engaged by the Receiver hereunder shall be liable for any claims of any nature whatsoever of such employees, agents, or other personnel that arose prior

to the date and time of the entry of this Order, which claims, include, but are not limited to, unpaid but accrued wages, unpaid but accrued sick time, unpaid but accrued vacation time, unpaid but accrued overtime, or any and all other liabilities related to unemployment or worker's compensation claims. Such pre-Receivership claimed liabilities shall remain with the applicable Defendants. Similarly, neither the Defendants nor any person or entity engaged by the Defendants shall be liable for any claims of any nature whatsoever of such employees, agents, or other personnel that arose after the date and time of the entry of this Order, which claims, include, but are not limited to, unpaid but accrued overtime or any and all other liabilities related to unemployment or workers compensation claims. Such claimed post-Receivership claimed liabilities shall remain with the Receivership Estate;

e) to take all necessary actions to establish and maintain the Receivership Assets in a safe condition;

f) to enter into such other agreements as are reasonably necessary to maintain and operate the Receivership Assets, and the business of the Defendants;

g) to take any other action which is reasonably necessary to maintain and operate the business operations of the Defendants;

h) to market and sell the Receivership Assets, as a whole or in parts, free and clear of all claims, liens, and encumbrances without redemption periods, after notice to all parties having a lien on the Receivership Assets and any other party entering an appearance in the Receivership Estate case, and after a motion and approval by the Court of sale procedures and of sale or sales (the "Sale Procedures"). In the event

of any private sale(s) of the Receivership Assets pursuant to the Sale Procedures, in whole or in part, this Order does not waive, and nothing contained in this Order shall be deemed to waive, the requirements of 28 U.S.C. § 2001 and 28 U.S.C. § 2004; subject, however, to (1) the right of Plaintiff to object to Receiver's motion to approve sale procedures relating to the Receivership Assets and any of Receiver's motion(s) to approve the sale of any Receivership Assets, to the extent Plaintiff decides to do so, and (2) the right of GM, Detroit Investment Fund, L.P., Chase Invest Detroit Fund, LLC, Ford Motor Company, any Senior Lender (as defined in the Intercreditor Agreement), and any other party having standing to object to the Receiver's motion to approve sale procedures relating to the Receivership Assets and any of the Receiver's motion(s) to approve the sale of any Receivership Assets, to the extent they decide to do so. Any and all claims, liens, and encumbrances shall attach to the net proceeds of the sale of the Receivership Assets received by the Receiver in the order of their priority, with the same validity, force and effect which they now have as against the Receivership Assets and subject to any claims and defenses the Receiver or other parties may possess with respect thereto, and shall be paid to the extent of available funds, in the following rank, order and priority: first, to satisfy any unpaid Administrative Expenses (as defined in Paragraph 2 herein); second, to satisfy all liens or encumbrances on the Receivership Assets in their proper order of priority, including the satisfaction of Receivership Certificates, if applicable; and third, to the extent applicable, to pay Unsecured Claims pro rata;

i) to obtain unsecured credit and incur unsecured debt in the ordinary course of business and said unsecured debt shall be a charge upon the Receivership Estate, junior in priority to the existing liens of secured creditors of the Defendants;

j) to obtain secured debt, other than loans from Plaintiff, subject to further Court order and a Court-approved budget (and any applicable variances ordered by the Court);

k) to the extent there are funds available for distribution to unsecured creditors, to conduct a claims process, to be approved by the Court, for the distribution;

l) to respond to creditor inquiries;

m) to review the participation of the directors, officers, or managers of any entity whose stock shares or membership interest the Receiver holds as part of the Receivership Assets;

n) To issue subpoenas to obtain documents and records pertaining to the Receivership and conduct discovery in this action on behalf of the Receiver;

o) to preclude, limit, or reduce access to any or all of the Receivership Assets, including any books and records (including customer lists, files, correspondence, tapes, computer programs, software, print-outs, and computer records) provided that after reasonable prior notice to the Receiver and under reasonable terms (i) all secured creditors shall have the right to inspect their Collateral, and (ii) Ford maintains inspection and reporting rights pursuant to the Ford Contract;

p) to perform pursuant to the terms of any existing contracts executed by the Defendants in connection with the Receivership Assets unless and until a motion or motions are filed with the Court seeking Court approval to reject executory contracts and unexpired leases not deemed to be in the interests of creditors of the Receivership Estate and such motion or motions are granted by the Court;

q) to execute, deliver, and perform all documents, instruments, and agreements necessary to effectuate and carry out the terms of this Order as the Receiver determines in his business judgment; and

r) to obtain any insurance, including liability and/or errors and omissions insurance, as the Receiver determines in his business judgment to protect the Receiver and the Professionals.

## 4. Inventory

Within 30 days after qualification hereunder, the Receiver shall file with the Court an inventory of all of the property of which he has taken possession pursuant to this Order.

## 5. Collection of Income

The Receiver shall collect all accounts receivable, profits and income, which are now or hereafter may be due from the operation of any business connected with the Receivership Assets and improvements thereon, including such income and profits presently held in bank accounts for the Defendants.

### 6. Monthly Statements

The Receiver shall prepare and serve the Plaintiff, the Defendants, and other parties entering an appearance in this case, monthly statements reflecting the Receiver's fees and expenses, including: (a) amounts to be paid to the Financial Consultant; (b) amounts to be paid to any consultant or other Professional; and (c) fees and costs of accountants, and attorneys authorized by the Court, incurred for each monthly period in the operation and administration of the Receivership Estate. Absent written objection from the Plaintiff or any other party in interest with standing, within 10 days of service of each statement, the Receiver may disburse from the Receivership Estate funds, if any, for the amount of each statement. If a written objection is received, the Receiver may pay the undisputed portion of such statement and will pay the disputed portion only upon entry of an Order of the Court allowing such disputed fees and expenses. Notwithstanding periodic payment of fees and expenses, all fees and expenses shall be subject to the Fee Budget and shall be submitted to the Court for its approval and confirmation, in the form of either a properly noticed interim request for fees, a stipulation of all parties, or in the Receiver's Final Account and Report.

### 7. Bank Accounts

The Receiver is empowered to change the authorized signature on the Defendants' bank accounts at Plaintiff (the "Current Bank Accounts") and open depository, bank or brokerage accounts (the "Receiver's Accounts") at Plaintiff. Receiver may transfer money from the Current Bank Accounts to the Receiver's

Accounts, and deposit monies and funds collected and received in connection with the Receivership Estate in the Receiver's Accounts. Monies coming into the possession of the Receiver and not expended for any purposes herein authorized may, (a) with permission of the Plaintiff, be held by the Receiver or (b) paid by the Receiver to the Plaintiff in satisfaction or partial satisfaction of its first priority lien in the Collateral. The Receiver shall file with the Court a Notice of any payment made by the Receiver to the Plaintiff.

### 8. Directives to Financial Institutions and others

Pending further order of the Court, any financial or brokerage institution, business entity,[2] or person that holds, controls, or maintains custody of any account or asset, or at any time since March 25, 2013, has held controlled, managed, or maintained custody of any account or asset owned by, in the name of, or for the benefit of any or all of the Defendants, shall:

a) prohibit the Defendants and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling, or otherwise disposing of any such asset except as directed by the Receiver;

b) deny the Defendants and all other persons access to any safe deposit box titled in the names of the Defendants either individually or jointly with another person or entity or in which any of the Receivership Assets is located; and

---

[2] To the extent applicable or necessary, Ford and the Receiver shall work in good faith to determine a process for reporting with respect to Ford payables. In addition, this provision shall not impact Ford setoff and recoupment interests.

13

c) provide the Receiver, within 5 business days of receiving a copy of this Order, a statement setting forth:

      i. the identification number of each and every account or asset titled in the names, individually or jointly, of or held on behalf of, or for the benefit of the Defendants;

      ii. the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed to close the account, and the name of the person or entity to whom such account or other asset was remitted;

      iii. the identification of any safe deposit box that is either titled in the names of the Defendants individually, or jointly with another person or entity, or is otherwise subject to access by the Defendants;

      iv. upon request by the Receiver, promptly provide copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, and all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

      v. upon request of the Receiver, forthwith turn over to the Receiver any and all contents of any safety deposit boxes, owned by the Defendants, in whole

or together with any other individual or entity, or in which any of the Receivership Assets is located.

### 9. Utilities

Any utility company providing services to the Facilities, including gas, electricity, water, sewer, trash collection, telephone, communications or similar services individually (the "Utility Company" and collectively, the "Utility Companies"), shall be prohibited from discontinuing service to the Facilities based upon unpaid bills incurred by the Defendants. Further, such utilities shall transfer any deposits held by the Utility Company to the exclusive control of the Receiver and shall be prohibited from demanding that the Receiver deposit additional funds in advance to secure such services. At its discretion, the Receiver may establish new accounts or continue utilizing the Defendants' accounts. Utility Companies are prohibited from discontinuing service while new accounts are in the process of being established by the Receiver.

The Receiver shall hand-deliver, or fax, a copy of this Order to all affected Utility Companies within 2 business days after the Receiver files his oath and bond or such other reasonable time as such Utility Company is made known to the Receiver. When a Facility is sold and/or an event terminating the receivership occurs, the Receiver shall hand-deliver, or fax, a written notice to all affected utilities within 2 business days after the closing of the sale and/or the termination occurs.

**10. Insurance**

The Receiver shall determine upon taking possession of the Receivership Assets whether, in the Receiver's judgment, there is sufficient insurance coverage. With respect to any insurance coverage in existence or obtained, the Plaintiff shall be named as an additional insured, and Receiver shall be named as an additional insured on the policies for the period that the Receiver shall be in possession of the Receivership Assets. If sufficient insurance coverage does not exist, the Receiver shall immediately notify the parties to this lawsuit and shall have 30 calendar days to procure sufficient all-risk and liability insurance on the Receivership Assets (excluding earthquake and flood insurance).

**11. Mail**

The Receiver may issue demands in the name of the Receivership upon the U.S. Postal Service to gain exclusive possession and control of such postal boxes as may have been used with respect to the Facilities and other Receivership Assets for the receipt of mail and may direct that certain mail related to the Facilities and other Receivership Assets be redirected to the Receiver. The U.S. Postmaster General is directed to accept a copy of this Order and to change the owner of any such postal boxes to the Receiver upon request of the Receiver.

**12. Discharge of the Receiver**

Discharge of the Receiver shall require a Court order after a properly noticed motion approving the Receiver's Final Report and Account and any exoneration of the Receiver's bond.

### 13. Receiver's Final Report and Account

As soon as is practicable after the termination of the Receivership Estate, the Receiver shall file, serve, and set a hearing on his Final Report and Account for the Receivership. Notice must be given to all persons of whom the Receiver is aware who have potential claims against the Receivership Estate.

The motion to approve the Final Report and Account, and for discharge of the Receiver, shall contain a summary of the receivership accounting including an enumeration, by major categories, of total revenues and total expenditures, distributions to creditors, if any, the net amount of any surplus or deficit with supporting facts, a declaration under penalty of perjury of the basis for the termination of the receivership, and evidence to support an order for the distribution of any surplus, or payment of any deficit, in the receivership estate.

### 14. Instructions from the Court

The Receiver and the parties to this case may at any time apply to the Court for further or other instructions or orders and for further powers necessary to enable the Receiver to perform his duties properly.

### 15. General Provisions

**A.** No person or entity shall file suit against the Receiver or the Professionals, including the Receiver's employees, agents, attorneys, the Financial Consultant, any consultant engaged by the Receiver, and any other professionals retained by the Receiver, or take other action against the Receiver or the Professionals, including the Receiver's employees, agents, attorneys, the Financial Consultant, consultants,

and/or any other professionals retained by the Receiver without an order of the Court permitting the suit or action, provided, however, that no prior Court order is required to file a motion in this action or to enforce the provisions of this Order or any other order of the Court.

**B.** Neither the Receiver nor the Professionals, including the Receiver's employees, agents, attorneys, the Financial Consultant, any consultant or any other professionals retained by the Receiver shall have any personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of Defendants' creditors because of the Receiver's duties as authorized by the Court.

**C.** The Receiver and the Professionals, including the Receiver's employees, agents, consultants, and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receivership, including the Receiver's duties and actions undertaken under this Order, except for claims due to their gross negligence, gross misconduct, malicious acts, or failure to comply with the Court's orders.

**D.** Nothing contained in this Order shall be construed as obligating the Receiver to advance his own funds to pay the costs and expenses of the Receivership that have been approved by the Court.

**E.** Defendants shall indemnify, defend and save the Receiver and the Professionals, including, the Receiver's employees, agents, attorneys, consultants and any other professionals retained by the Receiver, harmless from any and all claims or suits in connection with the Receivership or the Receivership Assets and from any

and all liability, including damages to property and injury to or death related to the Receivership Assets, except for liability arising out of the Receiver's gross misconduct or gross negligence that is not the result of the Defendants' or Plaintiff's instruction or direction.

**F.** The Receiver shall not be responsible for the preparation or filing of any tax returns or forms for the Defendants (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide the Defendants with information in the Receiver's possession that is necessary for the Defendants to prepare the tax returns or forms.

**G.** The Receiver, in the exercise of his business judgment, shall be solely empowered, but not obligated, to authorize, file, initiate, petition, defend, compromise, adjust, intervene in, dispose of, or become a party to any and all actions or proceedings, including any case in which any Defendant would be a debtor or debtor-in possession under Title 11 of the United States Code, in state, federal, or foreign court(s) necessary to preserve the Receivership Estate or to carry out his duties pursuant to this Order. The Receiver shall seek approval from the Court prior to filing any bankruptcy petition on behalf of the receivership entities. If Defendants wish to file for bankruptcy, they shall first consult with the Receiver. If the Receiver disagrees with Defendants that such action is appropriate, Defendants may then file a properly supported motion with the Court setting forth the factual and legal basis supporting their request to file bankruptcy over the objection of the Receiver.

**16. IT IS FURTHER ORDERED** that Defendants, their agents, officers, directors, members, managers, employees, assignees, successors, representatives, affiliates, or related entities, shall not do any act which will, or which will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Receivership Assets, or the preservation of Plaintiff's interest in the Receivership Assets.

**17. IT IS FURTHER ORDERED** that pending further Order of the Court, the Defendants, their agents, officers, directors, members, managers, employees, assignees, successors, representatives, affiliates or related entities, any creditor, claimant, or party in interest, of any of the Defendants, or other person, firm, or entity, are hereby stayed from taking any action[3] to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the names of the Defendants, the Receiver, or any of the Receivership Assets including but not limited to the following actions:

a) commencing, prosecuting, litigating, or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

b) accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of or retaining possession of, the Receivership Assets, any property claimed by the Defendants, or attempting to foreclose, forfeit, alter, or terminate any of the Defendants' interest in property, whether such acts are part of a judicial proceeding or otherwise;

---

[3] This provision is not intended to modify in any way the terms of the Ford Contract, provided, however, that the terms in this paragraph 17 as well as paragraphs 17a, 17b, 17c, and 17d below remain effective and applicable to Ford.

c) using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Receivership Assets or any property, wherever located, owned by or in the possession of the Defendants or the Receiver, or any agent of the Receiver; and

d) doing any act or thing to interfere with the Receiver taking control, possession, or management of any of the Receivership Assets or any property subject to the Receivership, or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of this Court over the Receivership Assets.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: June 20, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 20, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager