## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE HUNTINGTON NATIONAL                )
BANK, a National Banking Association,   )       Case No. 2:19-cv-10890
                                        )
        Plaintiff,                      )       Honorable Stephen J. Murphy, III
                                        )
v.                                      )
                                        )
SAKTHI AUTOMOTIVE GROUP                 )
USA, INC., a Michigan corporation       )
SAKTHI AMERICA CORPORATION,             )
a Michigan corporation, and SAKTHI      )
REAL ESTATE HOLDINGS, INC., a           )
Michigan corporation,                   )
                                        )
        Defendants.                     )
_____

## RECEIVER'S MOTION TO APPROVE BIDDING PROCEDURES AND
## TO AUTHORIZE AN AUCTION SALE

Kevin English of Lark Advisors LLC, the court-appointed receiver (the "Receiver") in the above captioned proceeding of Defendants Sakthi Automotive Group USA, Inc., Sakthi America Corporation, and Sakthi Real Estate Holdings, Inc., (the "Defendants"), files this *Motion to Approve Bidding Procedures and to Authorize an Auction Sale* (the "Motion"), seeking authority to conduct an auction of a sale of the receivership assets, or if there are no overbids, a sale to the stalking horse bidder. In support of this Motion, the Receiver relies on his *Brief in Support*

which is attached hereto and incorporated herein by reference, and the other pleadings that have been filed in the above-captioned case.

## **PRIOR REQUEST**

No prior motion for the relief requested herein has been made to this Court or any other Court.

WHEREFORE, the Receiver requests that the Court grant the Motion and enter an order, substantially in the form attached hereto as **Exhibit A**, which states (i) the Motion is GRANTED; (ii) that the Receiver is authorized to sell the Receivership Assets at the auction free and clear of any and all liens and/or other interests in the Receivership Assets; (iii) that the Receiver is authorized and directed to pay the Plaintiff in full at the closing of the sale all obligations and indebtedness owed to the Plaintiff under (a) that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and (b) that certain Credit and Security Agreement dated as of October 30, 2015, by and among the Plaintiff and the Defendants, as the same has been or may be amended, modified, or amended and restated from time to time; (iv) if there are no overbids, that the Receiver is authorized to close a sale of certain Receivership Assets to the stalking horse bidder; and (v) any other relief that this Court deems just and proper.

Dated: September 4, 2019          Respectfully submitted,

**THE DRAGICH LAW FIRM PLLC**

 /s/ David G. Dragich_____
David G. Dragich (P63234)
Amanda C. Vintevoghel (P76567)
17000 Kercheval Ave, Suite 210
Grosse Pointe, MI 48230
Phone: (313) 886-4550
ddragich@dragichlaw.com
avintevoghel@dragichlaw.com

Counsel to Receiver Kevin English,
Lark Advisors LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE HUNTINGTON NATIONAL )
BANK, a National Banking Association, ) Case No. 2:19-cv-10890
)
    Plaintiff, ) Honorable Stephen J. Murphy, III
)
v. )
)
SAKTHI AUTOMOTIVE GROUP )
USA, INC., a Michigan corporation )
SAKTHI AMERICA CORPORATION, )
a Michigan corporation, and SAKTHI )
REAL ESTATE HOLDINGS, INC., a )
Michigan corporation, )
)
    Defendants.
_____

## BRIEF IN SUPPORT OF RECEIVER'S MOTION TO APPROVE BIDDING PROCEDURES AND TO AUTHORIZE AN AUCTION SALE

Kevin English of Lark Advisors LLC, the court-appointed receiver (the "Receiver") in the above captioned proceeding of Defendants Sakthi Automotive Group USA, Inc., Sakthi America Corporation, and Sakthi Real Estate Holdings, Inc. (the "Defendants"), submits this brief in support of the *Motion to Approve Bidding Procedures and to Authorize an Auction Sale* (the "Motion"), seeking authority to conduct an auction of a sale of the receivership assets, or if there are no overbids, a sale to the stalking horse bidder. In support thereof, the Receiver states as follows:

1

## BACKGROUND

On March 27, 2019, Huntington National Bank (the "Plaintiff" or the "Bank") filed its *Complaint* [Docket No. 1] (the "Complaint") against Sakthi Automotive Group USA, Inc. ("SAGUSA"), Sakthi America Corporation ("SAC"), and Sakthi Real Estate Holdings, Inc. ("SREH," and along with SAGUSA and SAC, collectively the "Defendants" or the "Makers"), for breach of contract, seeking the appointment of a receiver and for other related relief.

On June 20, 2019, this Court entered its *Order Appointing Receiver* [Docket No. 79] (the "Receivership Order") appointing the Receiver to take control of the Receivership Assets[1] and manage the Facilities. Pursuant to the Receivership Order, the Receiver is authorized to "to market and sell the Receivership Assets...free and clear of all claims, liens, and encumbrances…after notice to all parties having a lien on the Receivership Assets and any other party entering an appearance…and after a motion and approval by the Court of sale procedures and of sale…." Receivership Order, ¶ 3(h).

Since his appointment, the Receiver has and continues to analyze and confer with the Plaintiff and other parties-in-interest regarding the Defendants' business operations and the sale the Receivership Assets. Prior to the filing of this Motion,

---

[1] Capitalized terms not herein defined shall have the meanings ascribed to them in the Receivership Order.

the Receiver began marketing efforts to sell the Receivership Assets to maximize the value of the receivership estate for the benefit of its creditors.  The Receiver seeks to sell the Defendants' business as a going concern to maximize value for creditors, to preserve jobs in the automotive industry and to ensure the continuity of supply to the Defendants' customers.  In addition, prior to the Bid Deadline (defined below), the Receiver will continue these marketing efforts, contacting strategic and financial prospective purchasers to maximize value.

The Receiver has also conferred with his counsel, and other parties-in-interest in the case regarding the best method to sell the Defendants' business or the Receivership Assets.  The Receiver has determined that the highest and best value to be obtained for the benefit of all stakeholders would be achieved by conducting a public sale of the Receivership Assets.

As of this filing, the Receiver has received an offer to purchase the Defendants' assets and businesses as a going concern from AAPICO Hitech Public Company Limited ("AAPICO").  AAPICO and the Receiver have engaged in arms-length, good faith negotiations regarding the terms of any potential sale.  As a result of these negotiations, the Receiver and AAPICO have entered into a proposed purchase agreement (the "Stalking Horse Purchase Agreement"), attached hereto as **Exhibit B**, which is subject to this Court's approval, as well as any higher or better offers as detailed below.

3

As detailed in the Stalking Horse Purchase Agreement, AAPICO's purchase price consists of (i) the assumption at Closing of the Assumed Liabilities and payment of the Cash Consideration (both as defined therein), plus (iii) a credit bid (the "Credit Bid") of AAPICO's Secured Obligations (as defined therein), totaling at least $100,115,904.22 as of the date of this filing, and (iv) the payment of the Post-Closing Budget Amount (as defined below) (the "Purchase Price").  *See* <u>Stalking Horse Purchase Agreement</u>, § 3.1, Schedule 3.1.   The Assumed Liabilities[2] include the following:

(i) Detroit Investment Fund - $4,166,664

(ii) Hitachi Capital - $1,250,000

(iii) Punjab National Bank - $4,463,747

(iv) Huron Valley National Bank - $1,253,454

(v) First Independent Bank - $2,213,528

(vi) Bangkok Bank - $20,312,666

(vii) General Motors - $12,245,507

(viii) Vigel SPA - $4,035,459

(ix) First Independence (Capital Lease) - $105,933

(x) Fessler & Bowman - $569,902.22

---

[2] The amounts set forth herein for the Assumed Liabilities are based on the Receiver's books and records as of August 26, 2019.  The Receiver will work with all necessary parties to make sure the amounts reflected are accurate.

The Stalking Horse Purchase Agreement constitutes an agreement to purchase all of the Receivership Assets, except for the Excluded Assets (as defined in the Stalking Horse Purchase Agreement).  *See* <u>Stalking Horse Purchase Agreement</u>, § 2.2.  The Receivership Assets that are being purchased pursuant to the Stalking Horse Purchase Agreement are collectively referred to as the "Purchased Assets." Further, AAPICO intends to reach an agreement with all lease equipment lienholders, to either return the leased equipment or resume payments under the terms of such agreements, *provided*, *however,* the Plaintiff shall be paid in full all amounts owed to it under that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and that certain Credit and Security Agreement dated as of October 30, 2015, by and among the Plaintiff and the Defendants, at the closing of the sale.

Further, pursuant to the Stalking Horse Purchase Agreement, AAPICO intends to assume the collective bargaining agreement and other obligations related to the employees of the Defendants as set forth therein.

By this Motion, the Receiver seeks this Court's approval of the sale of the Receivership Assets by an auction ("Auction") consistent with the procedures discussed below, or if there are no overbids, approval of a sale to AAPICO as the Stalking Horse Bidder (defined below).  The Receiver is seeking to complete the sale prior to October 15, 2019, or as soon as possible.  If the Auction is not completed

consistent with the timeline proposed below, the Receivership Estate will have insufficient funds to operate and complete a sale of the Receivership Assets.

## ARGUMENT

### A.   Applicable Law

It is well settled that a receiver has the authority to sell or otherwise dispose of property of the receivership estate. *See Jones v. Village of Proctorville,* 290 F.2d 49, 50 (6th Cir. 1961). The sale of property of the receivership estate is governed by sections 2001 through 2004 of tile 28 of the United States Code ("U.S.C."). In particular, 28 U.S.C. § 2004 governs the sale of personal property of a receivership estate. Section 2004 states that "[a]ny personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, unless the court orders otherwise." 28 U.S.C. § 2004. Section 2001 provides that any property of a receivership estate shall be sold by public sale upon the "terms and conditions as the court directs". 28 U.S.C. § 2001(a). The Court is given wide discretion in terms of approving a sale of personal property under § 2004 if such sale will maximize the proceeds from the sale. *See U.S. v. Stonehill,* 83 F.3d 1156 (9th Cir. 1996).

Further, the goal of any receivership estate should be to obtain the highest and best offer for the assets. *Fleet Nat'l Bank v. H & D Entm't, Inc.,* 926 F. Supp. 226, 239-40 (D.C. Mass. 1996) (citing *Jackson v. Smith*, 254 U.S. 586 (1921)).

Additionally, courts are in agreement that a receiver's business judgement is entitled to "great judicial deference." *See Golden Pac. Bancorp. v. F.D.I.C.*, 2002 WL 31875395 (S.D.N.Y. 2002); *aff'd sub nom*, *Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2nd Cir. 2004). Additionally, as noted above, the Receiver is authorized "to market and sell the Receivership Assets…free and clear of all claims, liens, and encumbrances…." Receivership Order, ¶ 3(h). The Receiver is also authorized to "execute, deliver, and perform all documents, instruments, and agreements necessary to effectuate and carry out the terms of this [Receivership] Order as the Receiver determines in his business judgment…." Receivership Order, ¶ 3(q). The Receiver has consulted with the Bank, and the Bank supports the Auction and the Stalking Horse Purchase Agreement. The Receiver has also been in regular contact with the Defendants' customers and other parties-in-interest who the Receiver believes support the sale to AAPICO and the Stalking Horse Purchase Agreement.

As noted herein, the Receiver has spent substantial time assessing the business operations of the Defendants and the value of the Receivership Assets. The Receiver has determined that a going concern sale of the Receivership Assets is in the best interest of the Defendants' creditors, customers, and other parties in interest. The Receiver has also determined that conducting an auction is the best method to maximize value. Additionally, the Receiver intends to pay all outstanding real estate and personal property taxes incurred prior to the Closing Date (as defined below),

as set forth in a budget agreed to by the Receiver and AAPICO, on the Purchased Assets upon receipt of the sale proceeds.  Therefore, the sale to AAPICO, subject to higher and better offers, is the best resolution.

**B.**     **Stalking Horse Bid**

AAPICO shall serve as the "Stalking Horse Bidder" throughout the proposed sale, according to the terms set forth in the Stalking Horse Purchase Agreement (the "Stalking Horse Bid"), which shall be subject to higher or better offers received on or before the Bid Deadline (defined below).  The Receiver believes that the offer contained in the Stalking Horse Bid is the highest and best offer for the Receivership Assets at this time.

**C.**     **Bidding Procedures for Auction**

The Receiver believes that the following Bidding Procedures are appropriate for this transaction, and requests entry of an order confirming the following procedures (the "Bidding Procedures") as set forth herein:

a.     **Definition of Qualified Bidder.**  AAPICO shall be a Qualified Bidder. Unless otherwise ordered by the Court for cause shown, any other potential bidder shall become a "Qualified Bidder" only if the potential bidder delivers to the Receiver by no later than 4:00 p.m. (prevailing Eastern Time) on September 30, 2019 (the "Bid Deadline") to The Dragich Law Firm PLLC, 17000 Kercheval Ave., Suite 210, Grosse Pointe, 48230 the following:

i.    A completed purchase agreement, substantially in the same form as the Stalking Horse Purchase Agreement, but reflecting an increase in the consideration for a total of $1,000,000.00 more than the Purchase Price, the Break-Up Fee, and Expense Reimbursement (as defined in the Stalking Horse Purchase Agreement), attached hereto as **Exhibit B**.  Such agreement shall include no financing contingencies and shall not be on terms worse than the Stalking Horse Purchase Agreement, as determined by the Receiver in his sole discretion, and shall include a cash component of the purchase price to pay (1) the Plaintiff in full at the closing of the sale all obligations and indebtedness owed to the Plaintiff under (a) that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and (b) that certain Credit and Security Agreement dated as of October 30, 2015, by and among the Plaintiff and the Defendants, as the same has been or may be amended, modified, or amended and restated from time to time, and (2) the Credit Bid Amount, the Break-Up Fee, and the Expense Reimbursement.

ii.   Financial disclosures, including bank statements or other proof of funds and other information acceptable to the Receiver to demonstrate such potential bidder's financial and other abilities to consummate a sale with respect to any expected bid higher than the Stalking Horse Bid.

iii.  A certified check or funds in an amount equal to ten percent (10%) of the purchase price (the "Good Faith Deposit") to be held in a non-interest bearing trust account by the Receiver and shall be subject to the jurisdiction of this Court. If a sale is ultimately consummated with the Qualified Bidder, the Good Faith Deposit will be applied to the purchase price.

iv.   Fully disclose the identity of each entity that will be bidding in the Auction, including, without limitation, the identity of any control parties of such Qualified Bidder.

     b.    **Due Diligence**. The Receiver is not responsible for, and will bear no liability with respect to, any information obtained by any Qualified Bidder in connection with the sale of the Receivership Assets.

     c.    **Auction.**

       i.    If there is at least one Qualified Bidder other than AAPICO, the Receiver shall conduct an auction (the "Auction") for the sale of the Receivership Assets. The Auction shall commence at 2:00 p.m. on October 2, 2019 (the "Auction Date") at the offices of The Dragich Law Firm PLLC, 17000 Kercheval Ave., Suite 210, Grosse Pointe, 48230 or such other location selected by the Receiver with notice to Qualified Bidders. The Receiver shall notify all Qualified Bidders of the time and place of the Auction. Only the Plaintiff, Qualified Bidders and holders of liens in the Purchased Assets may attend the Auction. Only Qualified Bidders shall be eligible to bid and participate at the Auction.

       ii.    The initial bid at the Auction shall equal or exceed the minimum overbid amount. The "Minimum Overbid Amount" shall provide for a cash purchase price equal the sum of the Purchase Price, the Expense Reimbursement Amount, the Break-Up Fee, and the initial overbid of $1,000,000. Any subsequent bid must increase consideration in an amount to be determined by the Receiver (the "Bid Increment"). The Minimum Overbid Amount will be determined by the Receiver at the Auction.

       iii.    At the Auction, the Receiver shall receive bids based upon the form of the Stalking Horse Purchase Agreement attached as **Exhibit B** hereto, subject to any Bid Increment established in connection with these procedures. If, at the Auction, the Receiver determines in his business judgment that the Bid Increment does not facilitate bidding or does not reduce the administrative costs associated with the Auction process, the Receiver may establish a new Bid Increment or determine that a pre-existing Bid Increment no longer applies. Qualified Bidders may submit as

many bids as they desire, but no bids may be revoked once submitted, except as otherwise provided herein.

iv.    The Receiver may conduct the Auction without the assistance of a separately retained auctioneer.  The Auction shall be conducted by the Receiver in a manner calculated by the Receiver in his sole discretion to achieve the higher and/or best offer for the Assets.

v.     Upon conclusion of the bidding, the Auction shall be closed.  The Receiver shall immediately determine the highest and best bid (the "Successful Bid") on the basis of the consideration offered and the financial commitment of the Qualified Bidder and certainty of consummating the sale, and the Successful Bid shall be memorialized and accepted by the immediate execution of a purchase agreement substantially in the form of **Exhibit B** hereto, with the consideration changed to reflect the amount of the Successful Bid at the Auction.

d.    **Closing**.  Unless otherwise ordered by the Court, closing on the sale of the Receivership Assets shall occur on a date selected by the Receiver after the Auction Date, but according to the Stalking Horse Purchase Agreement, no later than October 15, 2019 by 5:00 p.m., at the offices of Jones Day, 150 West Jefferson Avenue, Suite 2100, Detroit, Michigan, or such other place or time as shall be agreed upon by the Successful Bidder and the Receiver (the "Closing Date").  In the event the Successful Bidder fails to close the sale of the Receivership Assets on the Closing Date, the Receiver may notify the party that asserted the next highest or otherwise best offer for the Receivership Assets that its bid has become the Successful Bid (the "New Successful Bid").  Closing on the New Successful Bid shall occur as soon as possible following such notice, on a date reasonably selected by the Receiver.  This

11

process shall continue until the sale of the Receivership Assets has closed. If there are no qualified bids other than the Stalking Horse Bid, the Closing shall take place with AAPICO pursuant to the Stalking Horse Purchase Agreement on or before October 15, 2019.

e.  **Break-Up Fee**. If a closing of a sale of the Purchased Assets is consummated with a purchaser other than AAPICO, the Stalking Horse Purchase Agreement provides that, subject to approval of this Court, the Receiver will pay AAPICO a Break-Up Fee for lost opportunity costs as well as actual and projected out-of-pocket expenses incurred in connection with the tender of its offer, in the amount of $1,000,000.00 for the Break-Up Fee and up to $1,000,000 for the reimbursement of expenses to be paid at the Closing of the sale of the Purchased Assets from the sale proceeds.

f.  **Escrow of the Good Faith Deposits**. Unless otherwise agreed to by the Receiver, the Good Faith Deposits of all Qualified Bidders shall be held in a segregated escrow account until the Closing of the sale of the Assets. If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Receiver shall be entitled to retain the Good Faith Deposit as liquidated damages resulting from the breach or failure to perform by the Successful Bidder. The Receiver shall be entitled to return the Good Faith Deposits of any Qualified Bidders who do not become the Successful Bidder

after Closing of the sale of the Receivership Assets without further order of the Court.

    **g. Post-Closing Budget and Post-Closing Budget Amount**. Prior to the Closing, the Receiver and APPICO, or other Successful Bidder, shall agree on an acceptable budget for the funds necessary for the Receiver to wind-down and close the receivership case after the Closing (the "Post-Closing Budget"). Immediately after the Closing and without further Court order, the Receiver may retain an amount as agreed to in the Post-Closing Budget for payment of the Receiver's fees and costs and those fees and costs of the Receiver's retained professionals, incurred subsequent to the Closing (the "Post-Closing Budget Amount"). Any funds disbursed from the Post-Closing Budget Amount to the Receiver and the Receiver's retained professionals must be first approved by this Court according to the procedures set forth in section 6 of the Receivership Order.

    **f. The Huntington National Bank Payments**. At Closing, a portion of the cash proceeds of the sale shall be paid to the Plaintiff to pay in full the Defendants' and the Receivers' obligations and indebtedness owed to the Plaintiff under (i) that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and (ii) that certain Credit and Security Agreement dated as of October 30, 2015, by and among the Plaintiff

and the Defendants, as the same has been or may be amended, modified, or amended and restated from time to time.

The Receiver believes the Stalking Horse Bid is the highest and best offer of the Purchased Assets.   Therefore, a sale to AAPICO, or in the alternative, the Successful Bidder if there is one, is in the best interest of the Defendants' creditors.   Additionally, any such sale will be free and clear of any and all liens, claims, encumbrances and/or other interests.   Further, the holder of any such lien, claim, encumbrance can be adequately protected by having its respective lien, claim, or encumbrance transferred to the proceeds of sale with the same priority, validity, force, and effect as existed with respect to the Receivership Assets immediately prior to such sale.

## <u>NOTICE</u>

The Receiver intends to notify all interested parties, including all purported lienholders and taxing authorities, of this Motion and the Stalking Horse Bid received from AAPICO prior to any hearing scheduled for this Motion to afford all parties an opportunity to be heard.   The <u>Notice of Auction and Sale of Receivership Assets</u>, attached hereto as **Exhibit C**, will also be served on all potential bidders no later than two business days after the Court enters an order approving the Motion to ensure that all parties have adequate time to bid on the Receivership Assets. Additionally, the Notice of Auction and Sale of Receivership Assets provides that

any objections to the Auction contemplated herein must be filed with this Court by October 4, 2019, and also served on the attorney for the Receiver and the Stalking Horse Bidder.

## **CONCLUSION**

WHEREFORE, the Receiver requests that the Court enter an order, substantially in the form of **Exhibit A**, approving the sale of the Receivership Assets at the auction free and clear of any and all liens and/or other interests in the Receivership Assets with any such liens or interests attach to the proceeds of the sale; if there by no overbids, the Purchased Assets shall be sold to AAPICO in accordance with the Stalking Horse Purchase Agreement; and authorizing and directing the Receiver to pay the Plaintiff in full at the Closing of the sale all obligations and indebtedness owed to the Plaintiff under (a) that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and (b) that certain Credit and Security Agreement dated as of October 30, 2015, by and among the Plaintiff and the Defendants, as the same has been or may be amended, modified, or amended and restated from time to time.

Dated: September 4, 2019          Respectfully submitted,

**THE DRAGICH LAW FIRM PLLC**

 /s/ David G. Dragich
David G. Dragich (P63234)
Amanda C. Vintevoghel (P76567)
17000 Kercheval Ave, Suite 210
Grosse Pointe, MI 48230
Phone: (313) 886-4550
ddragich@dragichlaw.com
avintevoghel@dragichlaw.com

Counsel to Receiver Kevin English,
Lark Advisors LLC

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE HUNTINGTON NATIONAL          )
BANK, a National Banking Association,   )   Case No. 2:19-cv-10890
                                 )
      Plaintiff,               )   Honorable Stephen J. Murphy, III
                                 )
v.                               )
                                 )
SAKTHI AUTOMOTIVE GROUP          )
USA, INC., a Michigan corporation   )
SAKTHI AMERICA CORPORATION,      )
a Michigan corporation, and SAKTHI   )
REAL ESTATE HOLDINGS, INC., a    )
Michigan corporation,            )
                                 )
      Defendants.              )
_____

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2019, the *Motion to Approve Bidding Procedures and to Authorize an Auction Sale* was filed electronically with the Clerk of Court using the Court's ECF system and notice of this filing will be served on all parties of record.  Notice of the same will also be served on all parties in interest in the case[1] by U.S. First Class Mail or electronic mail, if applicable.

_____
[1] A list of all parties in interest that are served will be filed separately.

Dated: September 4, 2019          Respectfully submitted,

**THE DRAGICH LAW FIRM PLLC**


  /s/ David G. Dragich_____
David G. Dragich (P63234)
Amanda C. Vintevoghel (P76567)
17000 Kercheval Ave, Suite 210
Grosse Pointe, MI 48230
Phone: (313) 886-4550
ddragich@dragichlaw.com
avintevoghel@dragichlaw.com

Counsel to Receiver Kevin English,
Lark Advisors LLC