# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE HUNTINGTON NATIONAL     )
BANK, a National Banking Association,   )    Case No. 2:19-cv-10890
    )
    Plaintiff,     )    Honorable Stephen J. Murphy, III
    )
v.     )
    )
SAKTHI AUTOMOTIVE GROUP     )
USA, INC., a Michigan corporation    )
SAKTHI AMERICA CORPORATION,   )
a Michigan corporation, and SAKTHI   )
REAL ESTATE HOLDINGS, INC., a   )
Michigan corporation,     )
    )
    Defendants.     )
_____

**ORDER (A) APPROVING BIDDING PROCEDURES (B) AUTHORIZING DEFENDANTS TO ENTER INTO THE STALKING HORSE PURCHASE AGREEMENT, (C) AUTHORIZING AN AUCTION SALE, AND (D) APPROVING THE SALE TO THE STALKING HORSE BIDDER IF IT IS (I) THE ONLY QUALIFIED BIDDER OR (II) THE HIGHEST BIDDER**

This matter coming before the Court on *Receiver's Motion to Approve Bidding Procedures and to Authorize an Auction Sale* (the "Motion"),[1] filed by court-appointed receiver Kevin English of Lark Advisors LLC (the "Receiver") on behalf of Defendants Sakthi Automotive Group USA, Inc., Sakthi America

_____

[1]    Capitalized terms not defined herein have the meanings given to them in the Motion or in the Stalking Horse Purchase Agreement.

Corporation, and Sakthi Real Estate Holdings, Inc., (the "<u>Defendants</u>"), and the Court having reviewed the Motion, and having heard the statements of counsel regarding the relief requested in the Motion and at a hearing before the Court (the "<u>Hearing</u>"); and the Court finding that (i) it has jurisdiction over the matters raised in the Motion; (ii) the relief requested in the Motion is in the best interests of the Defendants, their estates, and their creditors; (iii) proper and adequate notice of the Motion and the Hearing has been given and no other or further notice is necessary; and (iv) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein;

IT IS HEREBY FOUND AND DETERMINED THAT:

A.     The Court has personal jurisdiction over Defendants, who conduct business in the State of Michigan.

B.     The Court is a proper venue under 28 U.S.C. § 1391(b) because a substantial portion of the acts and omissions giving rise to the claims occurred in this district, and a substantial proportion of the property that is the reason for this action is located in this district.  Additionally, under 28 U.S.C. § 1332(a), the Court has jurisdiction over this action between citizens of different states for an amount in controversy of over $75,000.00.  Further, Defendants consented to this Court's jurisdiction.

C.     The Receiver has (i) articulated good and sufficient reasons to this Court to grant the relief requested in the Motion, the Stalking Horse Purchase Agreement, and the Bidding Procedures, and (ii) demonstrated sound business justifications to support such relief.

D.     The Bidding Procedures are fair, reasonable, and appropriate, and are designed to maximize the value of the Defendants' estates.

E.     The Receiver and the Stalking Horse Bidder entered into the Stalking Horse Purchase Agreement, which is attached to the Motion as Exhibit B.  The provisions of the Stalking Horse Purchase Agreement and the Bidding Procedures are reasonable, including material inducements to the Stalking Horse Bidder which were reasonably relied upon by the Stalking Horse Bidder in deciding to enter into the Stalking Horse Purchase Agreement, and are designed to achieve the highest or otherwise best price for the Purchased Assets.

F.     The Receiver has demonstrated a compelling and sound business justification for authorizing and requiring the payment of the Break-Up Fee and the Expense Reimbursement Amount ("Bid Protections").  The Bidding Procedures, including, but not limited to, the Break-Up Fee and the Expense Reimbursement Amount, are fair and reasonable, provide a material benefit to the Defendants' estates and creditors, and were negotiated by the Defendants in good faith and at arm's length.

G.     The assurance of the payment of the Break-Up Fee and the Expense Reimbursement Amount (i) will promote more competitive bidding by inducing the Stalking Horse Bid, which otherwise would not have been made, without which competitive bidding would be limited, and which may be the highest and best available offer for the Purchased Assets, (ii) has induced the Stalking Horse Bidder to research the value of the Purchased Assets, conduct extensive due diligence, and propose the transactions contemplated by the Stalking Horse Purchase Agreement, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely, and (iii) will provide a benefit to the Defendants' estates by increasing the likelihood that the price at which the Purchased Assets are sold will reflect their true worth.

H.     Notice of the Motion, the Bidding Procedures, the proposed entry of this Order, and the hearing to consider the Motion, the Bidding Procedures, and the entry of this Order (the "Bidding Procedures Hearing") has been provided as set forth in the Motion, and is appropriate and reasonably calculated to provide all interested parties with timely and proper notice and no other or further notice of, or hearing on, the Motion or this Order is required.

I.     Entry of this Order is in the best interests of the Defendants and their respective estates and creditors, and all other parties in interest.

IT IS THEREFORE ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the entry of this Order or to the relief provided herein, that have not been withdrawn with prejudice, waived, resolved, or settled are hereby denied and overruled on the merits with prejudice.

3.      The Bidding Procedures, including, but not limited to, the Bid Protections and references therein to the Stalking Horse Purchase Agreement, attached hereto as **Annex 1** are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Receivership Assets under the terms thereof.   The Receiver and his professionals and agents are authorized and empowered to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.      As a result of the benefit to the Defendants and their estates of the Stalking Horse Purchase Agreement and to provide an incentive and to compensate the Stalking Horse Bidder for performing the substantial due diligence and incurring the expenses necessary and entering into the Stalking Horse Purchase Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, the Defendants shall pay the Stalking Horse Bidder, under the conditions and in the amount set forth in the Stalking Horse Purchase Agreement and this Order, the Break-Up Fee in the amount of $1,000,000.00 and the Expense Reimbursement of up to $1,000,000.  The Break-

Up Fee and the Expense Reimbursement Amount shall be paid in accordance with the Stalking Horse Purchase Agreement, the Bidding Procedures, and this Order.

5.    The Good Faith Deposit of the Successful Bidder (other than the Stalking Horse Bidder) will be used first to satisfy any Break-Up Fee and Expense Reimbursement Amount to which the Stalking Horse Bidder is entitled hereunder by reason of its not being the Successful Bidder.

6.    All objections based on events occurring at the Auction must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Local Rules of the Court; (d) filed with the Court by until 4:00 p.m. (prevailing Eastern Time) on the October 4, 2019 (the "Auction Objection Deadline"); and (e) served on the following parties (collectively, the "Objection Notice Parties") in accordance with the Local Rules of the Court **so as to be received on or before the relevant objection deadline**: (i) counsel for Receiver, The Dragich Law Firm PLLC, 17000 Kercheval Avenue, Suite 210, Grosse Pointe, MI 48230 (Attn: David Dragich, Esq. and Amanda Vintevoghel, Esq.); (ii) counsel for the Stalking Horse Bidder, (a) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (Attn: Thomas Wearsch, Esq.); and (b) Jones Day, 150 West Jefferson Avenue, Suite 2100, Detroit, MI 48266 (Attn: Arthur O'Reilly, Esq.). Each objection shall state the legal and factual basis of such objection and may be orally supplemented at the relevant hearing.

7.      The Receiver is authorized and empowered to consummate a sale to AAPICO Hitech Public Company Limited ("AAPICO") without further court approval ("Stalking Horse Closing") if either of the following conditions is met: (1) no other Qualified Bid is received or (2) an Auction is held and the Stalking Horse Bid is the highest bid of all the Qualified Bids.  With respect to the Stalking Horse Closing:

i.      The Receiver and Sellers are authorized to perform their obligations under and comply with all terms of the Stalking Horse Purchase Agreement and to take all action necessary to consummate the sale of the Purchased Assets, pursuant to and in accordance with the terms and conditions of the Stalking Horse Purchase Agreement and this Order, including, without limitation, to pay a cash component of the Purchase Price at the closing of the sale to the Plaintiff in an amount to pay in full all obligations and indebtedness owed to (1) the Plaintiff under (a) that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and (b) that certain Credit and Security Agreement dated as of October 30, 2015, by and among the Plaintiff and the Defendants, as the same has been or may be amended, modified, or amended and restated from time to time, and (2) the Purchaser the Credit Bid Amount, the Break-Up Fee and the Expense Reimbursement.

ii.     The Sellers are authorized to transfer the Purchased Assets in accordance with the terms and conditions of the Stalking Horse Purchase Agreement.

iii.    Upon consummation of the Stalking Horse Purchase Agreement, such transfer shall (a) be legal, valid, binding, and effective; (b) vest Purchaser with all right, title, and interest of the Sellers in the Purchased Assets as stated in the Stalking Horse Purchase Agreement; and (c) except as provided in the Stalking Horse

Purchase Agreement, be free and clear of all (i) liens, claims, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, license, options, deeds of trust, security interests, conditional sale, or other title retention agreements, pledges, liens (including, without limitation, mechanic's, materialman's, or other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of any kind, remedies of any kind, restrictions of any kind, of rights of offsets, contracts, rights of recoupment, rights of recovery, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, claims for environmental liability, claims for tax liability, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, including but not limited to any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Defendants, or the Defendants' predecessors or affiliates, claims, reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, and matters of any kind or nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether in rem or in personam, whether arising prior to or subsequent to the commencement of this Case, whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability, senior or subordinate, whether at law or equity, including all claims or rights based on any theory of successor or transferee liability, (ii) all environmental claims, all changes in control provisions, (iii) all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to Purchaser, (iv) all rights at law or equity, and (v) all interests in the Purchased Assets (collectively, "Interests or Claims"), with any such Interests or Claims to attach to the cash proceeds of the sale of the Purchased Assets in the order of their priority with the same validity, force, and effect and to the extent that they now have as against the Purchased

Assets, subject to any claims or defenses Defendants or any other party in interest may possess with respect thereto.

iv.   Following the closing of the sale of the Purchased Assets, no holder of any Interests or Claims in the Purchased Assets may interfere with Purchaser's use and enjoyment of the Purchased Assets based on or related to such Interests or Claims, or any actions that Defendants may take, and no person shall take any action to prevent, interfere with, or otherwise enjoin consummation of the transactions contemplated in or by the Stalking Horse Purchase Agreement and any related agreements, documents, or instruments, or this Order.  All holders of Interests or Claims of any kind are forever barred, estopped, and permanently enjoined from pursuing or asserting such Interests or Claims against Purchaser or any affiliate of Purchaser or any of their assets, property, successors, assigns, or against the Purchased Assets**.**

v.   From time to time following the Closing, the Receiver and Purchaser will, and will cause their respective affiliates to, execute, acknowledge, and deliver all such further conveyances, notices, assumptions, assignments, releases, and other instruments, and will take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers, and privileges intended to be conveyed to Purchaser under the Stalking Horse Purchase Agreement.  Nothing in this Order will require Purchaser or any of their affiliates to assume any liabilities other than the Assumed Liabilities specifically described in the Stalking Horse Purchase Agreement.

vi.   The sale of the Purchased Assets was undertaken in good faith and accordingly, the reversal or modification on appeal of the authorization provided herein of the sale of the Purchased Assets shall neither affect the validity or enforceability of the Stalking Horse Purchase Agreement nor the transfer of the Purchased Assets to Purchaser, free and clear of all Interests and Claims, and notwithstanding any such reversal or modification, the transfer of the Purchased Assets to Purchaser will be governed in

all respects by the original provisions of this Order and the Stalking Horse Purchase Agreement.

vii.   Except as expressly provided in the Stalking Horse Purchase Agreement, Purchaser is not assuming nor shall Purchaser or any of Purchaser's affiliates be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of Sellers in any way whatsoever relating to or arising out of Sellers' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Stalking Horse Purchase Agreement (including, without limitation, any Interests or Claims), or any liabilities calculable by reference to the Sellers or their assets or operations, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Stalking Horse Purchase Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Purchaser or any affiliate of Purchaser. Without limiting the generality of the foregoing and except as expressly provided in the Stalking Horse Purchase Agreement, Purchaser will not be liable or responsible, as a successor or otherwise, for Sellers' liabilities, debts, commitments, or obligations, whether calculable by reference to Sellers, arising on or prior to the Closing and under or in connection with (i) any employment or labor or collective bargaining agreements, consulting agreements, severance agreements, change in control agreements, or other similar agreements to which Sellers are a party, (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, programs, including without limitation, any pension plan of Sellers, (iii) the cessation of the Sellers' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, obligations that might otherwise arise from or under the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1991, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment

and Retraining Notification Act, (iv) environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to closing of the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601, et seq., (v) any bulk sales or similar law, (vi) any liabilities, debts, commitments or obligations of or required to be paid by Sellers for any taxes of any kind for any period, (vii) any liabilities, debts, commitments, or obligations for any taxes relating to the business of Sellers or the Purchased Assets for or applicable to the pre-closing period, and (viii) any products liability or similar claims, whether under any state or federal laws or otherwise.

viii.   Purchaser is deemed not to be, as a result of the consummation of the transaction contemplated by the Stalking Horse Purchase Agreement: (a) the successor to the Sellers; (b) de facto or otherwise, merged with or into Sellers; (c) the alter ego, a mere continuation or substantial continuation of the Sellers or the enterprise of the Sellers; or (d) responsible for any liability of the Sellers or for payment of any benefit accruing to the Sellers, except as specifically provided for in the Stalking Horse Purchase Agreement.

ix.   Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Stalking Horse Purchase Agreement.

x.   The Defendants and the Purchaser are authorized to make non-substantive changes (including changes to dates) to the Stalking Horse Purchase Agreement and any ancillary documents without seeking further order of this Court.

xi.   This Order and the Stalking Horse Purchase Agreement shall be binding upon, and shall inure to the benefit of, the Sellers and Purchaser, and their respective successors and permitted assigns.

xii.   The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

8.      The form of the *Notice of Auction and Sale of Receivership Assets*, attached as Exhibit C to the Motion, and the manner of service described herein are appropriate and sufficient for all purposes and hereby approved in all respects. The Defendants shall be permitted to make non-substantive revisions to such notices.

9.      Notwithstanding anything in the Motion, this Order, and/or the Stalking Horse Purchase Agreement to the contrary, upon the Closing of the sale contemplated herein, the Receiver is authorized and directed to immediately distribute the proceeds of the sale as follows:

    i.     To the Receiver, the Post-Closing Budget Amount to be held by the Receiver in Trust, which funds may only be used to pay those Receiver's fees and costs, and those fees and costs of the Receiver's retained professionals, which have been, or are subsequently, approved by this Court pursuant to section six of the Receivership Order;

    ii.    To the Plaintiff, an amount to pay in full the obligations and indebtedness owed to the Plaintiff under (i) that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and (ii) that certain Credit and Security Agreement dated as of October 30, 2015, by and among the Plaintiff and the Defendants, as the same has been or may be amended, modified, or amended and restated from time to time;

    iii.    To Purchaser, the Credit Bid Amount, the Break-Up Fee, and the Expense Reimbursement.

    iv.    The balance, if any, to be held by the Receiver pending further Order of this Court.

10.     No other or further notice of the Motion, this Order, the Bidding

Procedures, the sale, or the Auction shall be required.


Submitted by:

David G. Dragich
Amanda C. Vintevoghel
17000 Kercheval Avenue, Suite 210
Grosse Pointe, MI 48230

*Attorneys for Receiver Kevin English,*
*Lark Advisors LLC*

Thomas M. Wearsch (admitted *pro hac vice*)
Jones Day
North Point
901 Lakeside Avenue
Cleveland, OH 44114

Arthur T. O'Reilly
Jones Day
150 West Jefferson Avenue, Suite 2100
Detroit, MI 48226

*Attorneys for AAPICO*

## <u>Annex 1</u>

**Bidding Procedures**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| THE HUNTINGTON NATIONAL BANK, a National Banking Association, | ) ) ) | Case No. 2:19-cv-10890 |
| Plaintiff, | ) ) | Honorable Stephen J. Murphy, III |
| v. | ) ) | |
| SAKTHI AUTOMOTIVE GROUP USA, INC., a Michigan corporation SAKTHI AMERICA CORPORATION, a Michigan corporation, and SAKTHI REAL ESTATE HOLDINGS, INC., a Michigan corporation, | ) ) ) ) ) ) | |
| Defendants. | | |

_____

### BIDDING PROCEDURES[1]

The Receiver believes that the following Bidding Procedures are appropriate for this transaction, and requests entry of an order confirming the following procedures (the "Bidding Procedures") as set forth herein:

a.   **Definition of Qualified Bidder.**  AAPICO shall be a Qualified Bidder. Unless otherwise ordered by the Court for cause shown, any other potential bidder shall become a "Qualified Bidder" only if the potential bidder delivers to the

_____

[1]   Capitalized terms not defined herein have the meanings given to them in the Motion or in the Stalking Horse Purchase Agreement.

-1-

Receiver by no later than 4:00 p.m. (prevailing Eastern Time) on September 30, 2019 (the "Bid Deadline") to The Dragich Law Firm PLLC, 17000 Kercheval Avenue, Suite 210, Grosse Pointe, MI 48230 the following:

i.   A completed purchase agreement, substantially in the same form as the Stalking Horse Purchase Agreement, but reflecting an increase in the consideration for a total of $1,000,000.00 more than the Purchase Price, the Break-Up Fee, and Expense Reimbursement Amount (as defined in the Stalking Horse Purchase Agreement), attached to the Motion as Exhibit B. Such agreement shall include no financing contingencies and shall not be on terms worse than the Stalking Horse Purchase Agreement, as determined by the Receiver in his sole discretion, and shall include a cash component of the Purchase Price to pay (1) the Plaintiff in full at the closing of the sale all obligations and indebtedness owed to the Plaintiff under (a) that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and (b) that certain Credit and Security Agreement dated as of October 30, 2015, by and among the Plaintiff and the Defendants, as the same has been or may be amended, modified, or amended and restated from time to time, and (2) the Purchaser the Credit Bid Amount, the Break-Up Fee, and the Expense Reimbursement.

ii.  Financial disclosures, including bank statements or other proof of funds and other information acceptable to the Receiver to demonstrate such Potential Bidder's financial and other abilities to consummate a sale with respect to any expected bid higher than the Stalking Horse Bid.

iii. A certified check or funds in an amount equal to ten percent (10%) of the purchase price (the "Good Faith Deposit") to be held in a non-interest bearing trust account by the Receiver and shall be subject to the jurisdiction of this Court. If a sale is ultimately consummated with the

Qualified Bidder, the Good Faith Deposit will be applied to the purchase price.

iv.    Fully disclose the identity of each entity that will be bidding in the Auction, including, without limitation, the identity of any control parties of such Qualified Bidder.

b.    **Due Diligence**.  The Receiver is not responsible for, and will bear no liability with respect to, any information obtained by any Qualified Bidder in connection with the sale of the Receivership Assets.

c.    **Auction.**

i.    If there is at least one Qualified Bidder other than AAPICO, the Receiver shall conduct an auction (the "Auction") for the sale of the Receivership Assets.  The Auction shall commence at 2:00 p.m. on October 2, 2019 (the "Auction Date") at the offices of The Dragich Law Firm PLLC, 17000 Kercheval Avenue, Suite 210, Grosse Pointe, 48230 or such other location selected by the Receiver with notice to Qualified Bidders.  The Receiver shall notify all Qualified Bidders of the time and place of the Auction. Only the Plaintiff, Qualified Bidders, and holders of liens in the Purchased Assets may attend the Auction.   Only Qualified Bidders shall be eligible to bid and participate at the Auction.

ii.    The initial bid at the Auction shall equal or exceed the minimum overbid amount.  The "Minimum Overbid Amount" shall be in cash and shall equal the sum of the Purchase Price, the Expense Reimbursement Amount, the Break-Up Fee, and the initial overbid of $1,000,000.    Any subsequent bid must increase consideration in an amount to be determined by the Receiver (the "Bid Increment").  The Minimum Overbid Amount will be determined by the Receiver at the Auction.

iii.    At the Auction, the Receiver shall receive bids based upon the form of the Stalking Horse Purchase Agreement attached to the Motion as Exhibit B, subject to any Bid Increment established in

connection with these procedures.  If, at the Auction, the Receiver determines in his business judgment that the Bid Increment does not facilitate bidding or does not reduce the administrative costs associated with the Auction process, the Receiver may establish a new Bid Increment or determine that a pre-existing Bid Increment no longer applies.  Qualified Bidders may submit as many bids as they desire, but no bids may be revoked once submitted, except as otherwise provided herein.

iv.    The Receiver may conduct the Auction without the assistance of a separately retained auctioneer.  The Auction shall be conducted by the Receiver in a manner calculated by the Receiver in his sole discretion to achieve the higher and/or best offer for the Receivership Assets.

v.    Upon conclusion of the bidding, the Auction shall be closed.  The Receiver shall immediately determine the highest and best bid (the "<u>Successful Bid</u>") on the basis of the consideration offered and the financial commitment of the Qualified Bidder and certainty of consummating the sale, and the Successful Bid shall be memorialized and accepted by the immediate execution of a purchase agreement substantially in the form of Exhibit B attached to the Motion, with the consideration changed to reflect the amount of the Successful Bid at the Auction.

d.    **Closing**.  Unless otherwise ordered by the Court, closing on the sale of the Receivership Assets shall occur on a date selected by the Receiver after the Auction Date, but according to the Stalking Horse Purchase Agreement, no later than October 15, 2019, at the offices of Jones Day, 150 West Jefferson Avenue, Suite 2100, Detroit, Michigan, or such other place or time as shall be agreed upon by the Successful Bidder and the Receiver (the "<u>Closing Date</u>").  In the event the Successful Bidder fails to close the sale of the Receivership Assets on the Closing Date, the Receiver may notify the party that asserted the next highest or otherwise best offer

for the Receivership Assets that its bid has become the Successful Bid (the "<u>New Successful Bid</u>").  Closing on the New Successful Bid shall occur as soon as possible following such notice, on a date reasonably selected by the Receiver.  This process shall continue until the sale of the Receivership Assets has closed.  If there are no qualified bids other than the Stalking Horse Bid, the Closing shall take place with AAPICO pursuant to the Stalking Horse Purchase Agreement on or before October 15, 2019.

       e.    **Break-Up Fee**.  If a closing of a sale of the Purchased Assets is consummated with a purchaser other than AAPICO, the Stalking Horse Purchase Agreement provides that, subject to approval of this Court, the Receiver will pay AAPICO a Break-Up fee for lost opportunity costs as well as actual and projected out-of-pocket expenses incurred in connection with the tender of its offer, in the amount of $1,000,000.00 for the Break-Up Fee and up to $1,000,000 for the reimbursement of expenses to be paid at the Closing of the sale of the Purchased Assets from the sale proceeds.

       f.    **Escrow of the Good Faith Deposits**. Unless otherwise agreed to by the Receiver, the Good Faith Deposits of all Qualified Bidders shall be held in a segregated escrow account until the Closing of the sale of the Receivership Assets.  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Receiver shall be

entitled to retain the Good Faith Deposit as liquidated damages resulting from the breach or failure to perform by the Successful Bidder.  The Receiver shall be entitled to return the Good Faith Deposits of any Qualified Bidders who do not become the Successful Bidder after Closing of the sale of the Receivership Assets without further order of the Court.

The Receiver believes the Stalking Horse Bid is the highest and best offer of the Purchased Assets.  Therefore, a sale to AAPICO, or in the alternative, the Successful Bidder if there is one, is in the best interest of the Defendants' creditors. Additionally, any such sale will be free and clear of any and all liens, claims, encumbrances, and/or other interests.  Further, the holder of any such lien, claim, or encumbrance can be adequately protected by having its respective lien, claim, or encumbrance transferred to the proceeds of sale with the same priority, validity, force, and effect as existed with respect to the Receivership Assets immediately prior to such sale.

## NOTICE

The Receiver intends to notify all interested parties, including all purported lienholders and taxing authorities, of this Motion and the Stalking Horse Bid received from AAPICO prior to any hearing scheduled for this Motion to afford all parties an opportunity to be heard.  The *Notice of Auction and Sale of Receivership Assets*, attached to the Motion as Exhibit C, will also be served on all potential

bidders no later than two business days after the Court enters this order approving the Motion to ensure that all parties have adequate time to bid on the Receivership Assets.   Additionally, the Notice of Auction and Sale of Receivership Assets provides that any objections to the Auction contemplated herein must be filed with this Court by October 4, 2019, and also served on the attorney for the Receiver and the Stalking Horse Bidder.