UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON
NATIONAL BANK,    Case No. 2:19-cv-10890

      Plaintiff,    HONORABLE STEPHEN J. MURPHY, III

v.

SAKTHI AUTOMOTIVE
GROUP USA, INC., et al.,

      Defendants.
                             /

**ORDER GRANTING IN PART AND
DENYING IN PART RECEIVER'S MOTION TO APPROVE
BIDDING PROCEDURES AND TO AUTHORIZE AUCTION SALE [120]**

The matter comes before the Court on Receiver's motion to approve bidding procedures and to authorize an auction sale (the "Motion"), filed by the Court-appointed receiver Kevin English of Lark Advisors LLC on behalf of Defendants Sakthi Automotive Group USA, Inc., Sakthi America Corporation, and Sakthi Real Estate Holdings, Inc. The Court has reviewed the Motion and finds that (1) it has jurisdiction over the matters raised in the Motion; (2) the relief requested in the Motion is in the best interests of Defendants, their estates, and their creditors; (3) proper and adequate notice of the Motion has been given and no other or further notice is necessary; and (4) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein. Furthermore, because only one response was filed in opposition to Receiver's Motion

1

and the response does not oppose the bidding procedures or the auction itself, *see* ECF 127, the Court will consider the Motion as unopposed.

**WHEREFORE**, it is hereby **ORDERED** that Receiver's motion to approve bidding procedures and to authorize an auction sale [120] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Receiver's Motion is **DENIED** as to the current Asset Purchase Agreement listing Defendants' debts owed to Williams, Williams, Rattner & Plunkett, P.C. ("WWRP") for legal fees and expenses related to the present action totaling $69,667.60. Receiver shall **AMEND** the Asset Purchase Agreement to include Defendants' debt of $69,667.60 owed to WWRP for legal services provided in the present proceeding under the "Assumed Liabilities" in Section 2.3 of the Agreement.

**IT IS FURTHER ORDERD** that Receiver's Motion is **GRANTED** as follows:

1. All objections to the entry of this order or to the relief provided herein, that have not been withdrawn with prejudice, waived, resolved, or settled are hereby denied and overruled on the merits with prejudice.

2. The Bidding Procedures,[1] *see* ECF 120-1, PgID 3917–23, including, but not limited to, the Bid Protections and references therein to the Stalking Horse Purchase Agreement, are hereby approved in all respects and shall govern all bids and bid proceedings relating to the Receivership Assets under the terms thereof.

---

[1] Capitalized terms not defined herein have the meanings given to them in Receiver's Motion, its exhibits, or the Stalking Horse Purchase Agreement, ECF 120-2.

Receiver and his professionals and agents are authorized and empowered to take any and all actions necessary or appropriate to implement the Bidding Procedures.

3. As a result of the benefit to Defendants and their estates of the Stalking Horse Purchase Agreement and to provide an incentive and to compensate the Stalking Horse Bidder for performing the substantial due diligence and incurring the expenses necessary and entering into the Stalking Horse Purchase Agreement with the knowledge and risk that arises from participating in the sale and subsequent bidding process, Defendants shall pay the Stalking Horse Bidder, under the conditions and in the amount set forth in the Stalking Horse Purchase Agreement and this order, the Break-Up Fee in the amount of $1,000,000.00 and the Expense Reimbursement of up to $1,000,000.00. The Break-Up Fee and the Expense Reimbursement Amount shall be paid in accordance with the Stalking Horse Purchase Agreement, the Bidding Procedures, and this order.

4. The Good Faith Deposit of the Successful Bidder (other than the Stalking Horse Bidder) will be used first to satisfy any Break-Up Fee and Expense Reimbursement Amount to which the Stalking Horse Bidder is entitled hereunder by reason of its not being the Successful Bidder.

5. All objections based on events occurring at the Auction must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Local Rules of the Court; (d) filed with the Court by 4:00 p.m. (prevailing Eastern Time) on October 4, 2019 (the "Auction Objection Deadline"); and (e) served on the following parties (collectively, the "Objection Notice Parties") in accordance

with the Local Rules of the Court **so as to be received on or before the relevant objection deadline**: (i) counsel for Receiver, The Dragich Law Firm PLLC, 17000 Kercheval Avenue, Suite 210, Grosse Pointe, MI 48230 (Attn: David Dragich, Esq. and Amanda Vintevoghel, Esq.); (ii) counsel for the Stalking Horse Bidder, (a) Jones Day, North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (Attn: Thomas Wearsch, Esq.); and (b) Jones Day, 150 West Jefferson Avenue, Suite 2100, Detroit, MI 48266 (Attn: Arthur O'Reilly, Esq.). Each objection shall state the legal and factual basis of such objection and may be orally supplemented at a relevant hearing.

6. Receiver is authorized and empowered to consummate a sale to AAPICO Hitech Public Company Limited ("AAPICO")—the Stalking Horse Bidder—without further Court approval ("Stalking Horse Closing") if either of the following conditions is met: (1) no other Qualified Bid is received or (2) an Auction is held and the Stalking Horse Bid is the highest bid of all the Qualified Bids. With respect to the Stalking Horse Closing:

    i. Receiver and Sellers are authorized to perform their obligations under and comply with all terms of the Stalking Horse Purchase Agreement and to take all action necessary to consummate the sale of the Purchased Assets, pursuant to and in accordance with the terms and conditions of the Stalking Horse Purchase Agreement and this order, including, without limitation, to pay a cash component of the Purchase Price at the closing of the sale to Plaintiff in an amount to pay in full all obligations and indebtedness owed to (1) Plaintiff under (a) that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and (b) that certain Credit and Security Agreement dated as of October 30, 2015, by and among Plaintiff and Defendants, as the same has been or may be amended, modified, or amended and restated from time to time, and (2) the Purchaser the Credit Bid Amount, the Break-Up Fee and the Expense Reimbursement.

4

    ii.    Sellers are authorized to transfer the Purchased Assets in accordance with the terms and conditions of the Stalking Horse Purchase Agreement.

    iii.    Upon consummation of the Stalking Horse Purchase Agreement, such transfer shall (a) be legal, valid, binding, and effective; (b) vest Purchaser with all right, title, and interest of the Sellers in the Purchased Assets as stated in the Stalking Horse Purchase Agreement; and (c) except as provided in the Stalking Horse Purchase Agreement, be free and clear of all (i) liens, claims, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, license, options, deeds of trust, security interests, conditional sale, or other title retention agreements, pledges, liens (including, without limitation, mechanic's, materialman's, or other consensual and nonconsensual liens and statutory liens), judgments, demands, encumbrances, rights of any kind, remedies of any kind, restrictions of any kind, of rights of offsets, contracts, rights of recoupment, rights of recovery, claims for reimbursement, claims for contribution, claims for indemnity, claims for exoneration, claims for environmental liability, claims for tax liability, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, including but not limited to any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of Defendants, or Defendants' predecessors or affiliates, claims, reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests, and matters of any kind or nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether in rem or in personam, whether arising prior to or subsequent to the commencement of the present case, whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability, senior or subordinate, whether at law or equity, including all claims or rights based on any theory of successor or transferee liability, (ii) all environmental claims, all changes in control provisions, (iii) all rights to object or consent to the effectiveness of the transfer of the Purchased Assets to Purchaser, (iv) all rights at law or equity, and (v) all interests in the

|     | Purchased Assets (collectively, "Interests or Claims"), with any such Interests or Claims to attach to the cash proceeds of the sale of the Purchased Assets in the order of their priority with the same validity, force, and effect and to the extent that they now have as against the Purchased Assets, subject to any claims or defenses Defendants or any other party in interest may possess with respect thereto. |
|-----|---|
| iv. | Following the closing of the sale of the Purchased Assets, no holder of any Interests or Claims in the Purchased Assets may interfere with Purchaser's use and enjoyment of the Purchased Assets based on or related to such Interests or Claims, or any actions that Defendants may take, and no person shall take any action to prevent, interfere with, or otherwise enjoin consummation of the transactions contemplated in or by the Stalking Horse Purchase Agreement and any related agreements, documents, or instruments, or this order. All holders of Interests or Claims of any kind are forever barred, estopped, and permanently enjoined from pursuing or asserting such Interests or Claims against Purchaser or any affiliate of Purchaser or any of their assets, property, successors, assigns, or against the Purchased Assets. |
| v. | From time to time following the closing, Receiver and Purchaser will, and will cause their respective affiliates to, execute, acknowledge, and deliver all such further conveyances, notices, assumptions, assignments, releases, and other instruments, and will take such further actions, as may be reasonably necessary or appropriate to assure fully to Purchaser and its respective successors or assigns, all of the properties, rights, titles, interests, estates, remedies, powers, and privileges intended to be conveyed to Purchaser under the Stalking Horse Purchase Agreement. Nothing in this order will require Purchaser or any of their affiliates to assume any liabilities other than the Assumed Liabilities specifically described in the Stalking Horse Purchase Agreement. |
| vi. | The sale of the Purchased Assets was undertaken in good faith and accordingly, the reversal or modification on appeal of the authorization provided herein of the sale of the Purchased Assets shall neither affect the validity or enforceability of the Stalking Horse Purchase Agreement nor the transfer of the Purchased Assets to Purchaser, free and clear of all Interests and Claims, and notwithstanding any such reversal or modification, the transfer of the Purchased Assets to Purchaser will be governed in |

|  |  |
|---|---|
|  | all respects by the original provisions of this order and the Stalking Horse Purchase Agreement. |
| vii. | Except as expressly provided in the Stalking Horse Purchase Agreement, Purchaser is not assuming nor shall Purchaser or any of Purchaser's affiliates be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of Sellers in any way whatsoever relating to or arising out of Sellers' ownership or use of the Purchased Assets prior to the consummation of the transactions contemplated by the Stalking Horse Purchase Agreement (including, without limitation, any Interests or Claims), or any liabilities calculable by reference to the Sellers or their assets or operations, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Stalking Horse Purchase Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Purchaser or any affiliate of Purchaser. Without limiting the generality of the foregoing and except as expressly provided in the Stalking Horse Purchase Agreement, Purchaser will not be liable or responsible, as a successor or otherwise, for Sellers' liabilities, debts, commitments, or obligations, whether calculable by reference to Sellers, arising on or prior to the Closing and under or in connection with (i) any employment or labor or collective bargaining agreements, consulting agreements, severance agreements, change in control agreements, or other similar agreements to which Sellers are a party, (ii) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, programs, including without limitation, any pension plan of Sellers, (iii) the cessation of the Sellers' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, obligations that might otherwise arise from or under the Employee Retirement Income Security Act of 1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination and Employment Act of 1967, the Americans with Disabilities Act of 1991, the Federal Rehabilitation Act of 1973, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining Notification Act, (iv) environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to closing of the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or |

7

waste), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601, et seq., (v) any bulk sales or similar law, (vi) any liabilities, debts, commitments or obligations of or required to be paid by Sellers for any taxes of any kind for any period, (vii) any liabilities, debts, commitments, or obligations for any taxes relating to the business of Sellers or the Purchased Assets for or applicable to the pre-closing period, and (viii) any products liability or similar claims, whether under any state or federal laws or otherwise.

viii. Purchaser is deemed not to be, as a result of the consummation of the transaction contemplated by the Stalking Horse Purchase Agreement: (a) the successor to Sellers; (b) de facto or otherwise, merged with or into Sellers; (c) the alter ego, a mere continuation or substantial continuation of Sellers or the enterprise of Sellers; or (d) responsible for any liability of Sellers or for payment of any benefit accruing to Sellers, except as specifically provided for in the Stalking Horse Purchase Agreement.

ix. Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Stalking Horse Purchase Agreement.

x. Defendants and Purchaser are authorized to make non-substantive changes (including changes to dates) to the Stalking Horse Purchase Agreement and any ancillary documents without seeking further order of the Court.

xi. This order and the Stalking Horse Purchase Agreement shall be binding upon, and shall inure to the benefit of, Sellers and Purchaser, and their respective successors and permitted assigns.

xii. The terms and conditions of this order shall be immediately effective and enforceable upon its entry.

7. The form of the *Notice of Auction and Sale of Receivership Assets*, *see* ECF 120-3, and the manner of service described herein are appropriate and sufficient for all purposes and hereby approved in all respects. Defendants shall be permitted to make non-substantive revisions to such notices.

8. Notwithstanding anything in the Motion, this order, and/or the Stalking Horse Purchase Agreement to the contrary, upon the closing of the sale contemplated herein, Receiver is authorized and directed to immediately distribute the proceeds of the sale as follows:

   i. To Receiver, the Post-Closing Budget Amount to be held by the Receiver in Trust, which funds may only be used to pay those Receiver's fees and costs, and those fees and costs of Receiver's retained professionals, which have been, or are subsequently, approved by the Court pursuant to section six of the Receivership Order;

   ii. To Plaintiff, an amount to pay in full the obligations and indebtedness owed to Plaintiff under (i) that certain Master Equipment Lease Agreement Number 57244, together with Leasing Schedule Nos. 57244-001, 002, 003, 004, 005, and 006, and (ii) that certain Credit and Security Agreement dated as of October 30, 2015, by and among Plaintiff and Defendants, as the same has been or may be amended, modified, or amended and restated from time to time;

   iii. To Purchaser, the Credit Bid Amount, the Break-Up Fee, and the Expense Reimbursement.

   iv. The balance, if any, to be held by Receiver pending further order of the Court.

9. No other or further notice of the Motion, this order, the Bidding Procedures, the sale, or the Auction shall be required.

   **SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 27, 2019, by electronic and/or ordinary mail.

David P. Parker  
Case Manager

9