UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON
NATIONAL BANK,                          Case No. 2:19-cv-10890

                Plaintiff,            HONORABLE STEPHEN J. MURPHY, III

v.

SAKTHI AUTOMOTIVE GROUP
USA, INC., et al.,

                Defendants.
_____/

**OPINION AND ORDER
GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT [252]
AND DENYING MOTION FOR SUMMARY JUDGMENT [253]**

Pending before the Court are cross motions for summary judgment. The motions pertain to a dispute between Plaintiffs Travelers Casualty and Surety Company of America and Travelers Indemnity Company of America (collectively "Travelers") and Defendant Sakthi Automotive Group USA. Travelers sued Sakthi for a declaratory judgment that "Sakthi has not met its burden of demonstrating that insurance coverage for its [c]laim is available" under either of two insurance policies. *Travelers Cas. & Sur. Co. of Am. v. Sakthi Auto. Co. of Am.*, Case No. 2:22-cv-10637, ECF 1, PgID 12–13 (E.D. Mich. Mar. 24, 2022) (Murphy, J.). The Court consolidated that suit with the present case because "the latter arose during a receivership proceeding in the former." ECF 236, PgID 5920. Defendant Sakthi then answered and counterclaimed that Plaintiff breached one or both insurance policies by "fail[ing] to

1

provide coverage" and "fail[ing] to distribute the insurance proceeds." ECF 239, PgID 5952. Subsequently, the parties filed and briefed cross motions for summary judgment. *See* ECF 252; 253; 254; 255; 256; 257. For the following reasons, the Court will grant in part Sakthi's motion, ECF 252, and deny Travelers' motion, ECF 253.[1]

## BACKGROUND

The case is complex. In 2019, Huntington National Bank sued Sakthi Automotive Group and its various entities (the Sakthi Group) for breach of contract. ECF 1. Huntington requested that the Court appoint a receiver for the Sakthi Group "as a matter of equity to protect it from injury and to ensure that its [c]ollateral [on a loan] is sold or otherwise liquidated and all proceeds are remitted directly to [Huntington]." *Id.* at 10. Huntington then filed an emergency motion for appointment of a receiver, ECF 6, that the Sakthi Group opposed, ECF 16. The Court denied the motion after a hearing. ECF 19. Huntington later moved for a preliminary injunction and again requested the appointment of a receiver. ECF 26. While the motion was pending, the Court granted several third-party motions to intervene. ECF 62; *See* ECF 36; 42; 44. Huntington, the Sakthi Group, and the intervening parties briefed the motion for a preliminary injunction and appointment of a receiver. *See* ECF 29; 30; 31; 38; 42; 45. After a hearing, the Court denied the motion for a preliminary injunction but granted the motion to appoint a receiver. ECF 49. The Court then appointed Mr. Kevin English to serve as the Receiver. ECF 79.

---

[1] Based on the briefing of the parties, the Court will resolve the motions on the briefs and without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

The Court empowered the Receiver "to take possession, custody, and control of the [Sakthi Group's] Collateral, as defined in the Credit Agreement to include all personal property, both tangible and intangible." *Id.* at 3482. Specifically, the Court empowered the receiver to exercise control of "any and all claims and causes of action of the [Sakthi Group]." *Id.* at 3483.

In his efforts to preserve, liquidate, and distribute the Sakthi Group's assets for the benefit of the creditors of the Sakthi Group, the Receiver filed several motions. *See e.g.*, ECF 84; 90; 100; 120; 156; 163; 165; 170; 184; 199; 200; 216; 224. Two years after his appointment—and after diligently preserving and liquidating dozens of millions of dollars of assets—the Receiver filed a "motion to compel payment of insurance proceeds" and alleged that Travelers owed the Sakthi Group proceeds under one or both of two insurance policies. ECF 228. Travelers moved to quash the motion to compel. ECF 230. The parties briefed the motion, ECF 232; 233, but after a hearing they stipulated "to withdraw their respective [m]otions, and . . . have the Court order each [m]otion moot." ECF 235, PgID 5917. The Receiver and Travelers also stipulated that "Travelers [] shall commence a declaratory judgment action against Sakthi" to resolve the parties' differences. *Id.*

The parties proceeded as stipulated: Travelers sued for a declaratory judgment that it had no duty to pay on either insurance policy, Sakthi counterclaimed, and each party moved for summary judgment. *See* ECF 252; 253. Two separate insurance policies are at issue. The first policy is a "commercial insurance policy providing property coverage" (Property Policy). *Travelers Cas. & Sur. Co. of Am.*, Case No. 2:22-

3

cv-10637, ECF 1, PgID 2 (alterations omitted). The second policy is an "insurance policy providing crime coverage" (Crime Policy). *Id.* (alterations omitted). Both policies were in effect from December 2017 until December 2018, a period contemplated within the relevant terms of the receivership order. *Id.*; ECF 239, PgID 5928.

The Receiver claimed that the Sakthi Group is entitled to funds from either one or both policies because it suffered covered losses during the policy period. *See* ECF 252. "Sakthi manufactured safety-critical aluminum steering knuckles" and sold them to "General Motors, Volkswagen[,] and Ford." *Id.* at 6090–91. But in August 2018, "Sakthi's management team discovered that large quantities of Sakthi's property had been stolen and referred the matter to the Detroit Police Department." *Id.* at 6091. According to an affidavit of Detroit Police Captain Rebecca L. McKay, which the Receiver cited at length, the Detroit Police Department "responded to an apparent forced entry at Sakthi Automotive Group" on August 1, 2018. ECF 252-4, PgID 6147. The Detroit Police "discovered damage to the roll up garage door of a warehouse" and began to investigate the purported theft. *Id.*

As part of their investigation, the police executed "multiple search warrants." *Id.* at 6148. And Captain McKay attested that she "observed video footage" of the thefts. *Id.* at 6149. She also stated that when she executed a search warrant on Bushe Technologies, Inc. she "observed forty-three [] boxes of Sakthi parts . . . purchased from Metal X, Inc." *Id.* Later, law enforcement executed a search warrant on Metal X and "received from Metal X certain purchase orders, receipts, bills of lading, and

4

related purchasing documents evidencing the sale of Sakthi parts." *Id.* at 1650. The Metal X documents "identified McNichols Scrap, Red Metals, and Mann Metals . . . as the sellers of Sakthi parts." *Id.* The Detroit Police subsequently executed search warrants at each of the three scrap metal yards identified as sellers of Sakthi parts. *Id.* at 1650–54. Sakthi parts were found at each facility. *Id.* And each facility identified a different Sakthi employee as its source of the material. *See id.* at 6151 (identifying Biggs Global LLC as the seller "of the Sakthi material to Metal X."); 6152 (Sakthi employee Julius Triplett "admitted that he knew the parts he sold to Red Metals, which were contained in an unopened box labeled 'Sakthi', were stolen material."); 6153 (Scott Clugston, who sold Sakthi parts to Mann Metal, "confirmed that [Sakthi employee Tony] Ferrero was the man . . . who was involved in the sale of Sakthi parts to Clugston"). Ultimately, the Detroit Police Department "determined and concluded that there were three separate and unrelated scrap [metal] businesses that were involved in the [] purchase of Sakthi's stolen material: McNichols Scrap Iron & Metal Co., Red Metals Trading, Inc., and Mann Metals Corp." *Id.* at 6148 (alterations omitted).

After the Detroit Police Department concluded its investigation, the Receiver hired Aon Global Risk Consulting, a firm that "specializes in the investigation, forensic accounting, and collection of insurance claims." ECF 252, PgID 6101. "Aon submitted to Travelers three separate proof of loss forms under the Crime Policy . . . on behalf of the Receiver." *Id.* Travelers responded that it was "unable to provide coverage for Sakthi's loss." *Id.* Travelers' refusal to acknowledge coverage led

to the current lawsuit and the cross motions for summary judgment now before the Court. *See* ECF 252; 253.

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)). The Court may grant summary judgment as to "each claim or defense—or the part of each claim or defense" about which there is no genuine issue of material fact. Fed. R. Civ. P. 56(a).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

6

## DISCUSSION

To begin, the Court must determine the law to apply. A federal district court sitting in diversity must apply the forum State's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Consequently, Michigan choice-of-law rules apply. "In the absence of an express choice of law provision, Michigan courts apply forum law unless" either "(1) no substantial relationship exists between the forum State and the contract, or (2) the application of forum law would conflict with the policy interest of a State with a greater connection to the contract than the forum State." *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (alterations omitted). The contracts at issue lack express choice-of-law provisions. *See* ECF 253-2; 253-3. And the contracts were signed between a Connecticut insurer and a Michigan insured to insure goods in Michigan. *See Travelers Cas. & Sur. Co. of Am.*, Case No. 2:22-cv-10637, ECF 1; 1-1; 1-2. Thus, there is a substantial relationship between Michigan and the contract. *See Solo*, 819 F.3d at 794. And because the subject matter of the insurance contract is in Michigan and the out-of-State insurer agreed to insure goods in Michigan, no State has a greater interest in having its law applied than Michigan. Besides, the parties tacitly agreed that Michigan law applied when they both relied on Michigan case law in their briefing. *See* ECF 252; 253. The Court will therefore apply Michigan contract law. "In doing so, [the Court's] task is to apply the same law that Michigan [S]tate courts would apply." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (citation omitted).

7

In Michigan, "[a] party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming the breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178 (2014) (footnote omitted). "When interpreting a contract, a court must ascertain and enforce the parties' intent as expressed in its plain terms." *Detroit Pub. Sch. v. Conn*, 308 Mich. App. 234, 251 (2014) (citing *Wilkie v. Auto-Owners Ins. Co.,* 469 Mich. 41, 61 (2003)). The Court will first resolve the motion for summary judgment as to the Receiver's Crime Policy claim. Then, the Court will address the motion for summary judgment as to the Receiver's Property Policy claim. Last, the Court will rule on Travelers' motion for summary judgment.

I.   Crime Policy

The parties agreed that there was a valid, enforceable contract. *See* ECF 239, PgID 5952; ECF 240, PgID 6041. The first element of a breach of contract claim is therefore established.

The parties disagreed on the second element of a breach of contract claim: whether Travelers breached the Crime Policy. Under the Crime Policy, Sakthi had five obligations in event of a loss: (1) "notify [Travelers] as soon as possible"; (2) notify law enforcement authorities if [it] ha[d] reason to believe that any loss . . . involve[d] a violation of law"; (3) "submit to an examination under oath at [Travelers'] request and give [Travelers] a signed statement of the [] answers"; (4) "give [Travelers] a detailed, sworn proof of loss within 120 days"; and (5) "cooperate with [Travelers] in

8

the investigation and settlement of any claim." ECF 252-16, PgID 6532. And to recover under the policy Sakthi must show that it suffered a "direct loss" "directly caused by theft or forgery committed by an employee, whether identified or not." *Id.* at 6513 (alterations omitted).

Travelers agreed, or did not dispute, that Sakthi fulfilled its first, second, third, and fifth obligation. As to the first obligation, the parties appear to agree that Sakthi timely notified Travelers of the potential loss.[2] *See* ECF 252-21, PgID 6618; ECF 252-22, PgID 6628; ECF 255-2. As to the second obligation, the parties agreed that Sakthi reported the thefts to the Detroit police in early August 2018 within days of discovering the loss. ECF 252; PgID 6091; ECF 255, PgID 7480. For the third obligation, no evidence shows that Travelers requested a Sakthi Group representative to submit to an examination under oath, and neither party raised the issue in the briefs. *See* ECF 252; 253; 254; 255; 256; 257. Because Sakthi had a duty to submit to an examination under oath only if Travelers requested it and because it does not appear that Travelers requested an examination under oath, Sakthi fulfilled

---

[2] Travelers noted that "[a]lthough the proof of loss was due 120 days after discovery of the alleged loss, Sakthi and the Receiver requested no less than seven extensions in the time to submit the required proof and supporting documentation. Despite notifying Travelers Casualty in August 2018, the proofs of loss were not submitted until March 22, 2021." ECF 255, PgID 7482 (citations omitted). But Travelers did not clearly argue that the proof of loss was untimely. *See* ECF 255. The Court will assume Travelers abandoned the argument that the proof of loss was untimely or that the proof of loss was unsatisfactory for any other reason not argued in the briefing. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This [c]ourt's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

its third obligation. *See* ECF 252-16, PgID 6532. And as for the fifth obligation, Travelers did not argue that Sakthi was uncooperative in any investigation related to settling the claim. *See* ECF 255. Thus, the Court will find that Sakthi fulfilled its first, second, third, and fifth obligations under the Crime Policy.

The parties only disagreed on whether Sakthi satisfied its fourth obligation. Sakthi alleged it suffered three losses due to employee theft. *See* ECF 239, PgID 5945. Sakthi also claimed that it "g[a]ve [Travelers] [three] detailed, sworn proof[s] of loss." ECF 252-16, PgID 6532. Travelers disagreed. Travelers maintained that the proofs of loss are not satisfactory because (1) "[t]he Receiver's claim for [e]mployee [t]heft is based on inadmissible hearsay"; (2) "the Receiver cannot meet its burden of demonstrating separate losses"; and (3) "there are no records to support a covered loss or loss amount." ECF 255, PgID 7476.

After careful review of the briefs, supporting documents, and controlling case law, the Court will find that there is no genuine issue of material fact that Sakthi suffered a loss due to employee theft. But the Court will not grant summary judgment in full because there are issues of fact about whether Sakthi suffered one, two, or three covered losses; and there are issues of fact about the damages Sakthi suffered. The Court will address each of Travelers' arguments in turn.

A.    *Employee Theft Based on Hearsay*

To support its claim of employee theft, Sakthi primarily relied on Captain McKay's affidavit, the police reports that accompanied it, and the multitudinous

documents collected by the Detroit Police Department during its investigation. *See* ECF 252-4; 252-5; 252-6; 252-7; 252-8; 252-9; 252-10; 252-11; 252-12; 252-13; 252-14. Travelers argued that there is a genuine issue of material fact about whether Sakthi suffered a loss from employee theft because "the Receiver's claim for employee theft is based on inadmissible hearsay." ECF 255, PgID 7491 (alterations omitted). Not so. The affidavit and police reports might contain hearsay, but the Court need not decide that issue because the affidavit also relied on evidence that is plainly admissible. Captain McKay's affidavit concluded: "The [Detroit Police Department] has determined that Sakthi parts were stolen from Sakthi and subsequently sold to three separate scrap business." ECF 252-4, PgID 6154. Captain McKay also stated that she observed video footage of the thefts, saw stolen Sakthi parts being melted into scrap, viewed records of the purchase of stolen goods, and recovered boxes of stolen Sakthi goods from the three scrap metal yards. *Id.* at 6148–54. Indeed, the majority of Captain McKay's affidavit is based on her personal observations and not on the hearsay statements of witnesses. *See id.* ("I observed photographs that appeared to be Sakthi parts"; "we observed forty-three (43) boxes of Sakthi parts"; "I . . . observed video footage"; "I also observed video footage . . . show[ing] Sakthi employee Rayford Ford breaking into and attempting to break into Sakthi's Lafayette warehouse after hours"; "I observed photographs of sealed boxes of Sakthi parts on McNichols Scrap's nonferrous scale"; "I observed a box of Sakthi parts in the back of the warehouse"; "I requested [and reviewed] all sales receipts for the purchase of Sakthi parts"; "We conducted a search of the building and discovered two (2) Sakthi raw casting parts

11

inside a milk crate in plain sight."). Making what appears to be a frivolous argument, Travelers nevertheless contended that Captain McKay's affidavit "explicitly demonstrated that the Detroit Police Department did not suspect any Sakthi employees" of participating in the thefts. ECF 255, PgID 7491 (alterations omitted). But Travelers ignored the parts of Captain McKay's affidavit that discussed her observation of video footage of Sakthi employees stealing, and attempting to steal, Sakthi goods. *See* ECF 255. Besides, it is illogical to say that "the Detroit Police Department did not suspect any [Sakthi] employees" of participating in the theft when the affidavit contains several witness statements in which Sakthi employees were identified as the purveyors of stolen Sakthi goods.[3] *See e.g.*, ECF 252-4, PgID 6151–53.

In fact, the affidavit of Captain McKay leaves no genuine issue of material fact that Sakthi suffered a loss due to employee theft. A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts which demonstrate that there is a genuine issue for trial" "by affidavits or as otherwise provided in Rule 56." *Yopp v. U.S. Dep't of Just. Drug Enf't Admin.*, No. 10-10118, 2010 WL 3272845, at *4 (E.D.

---

[3] The statements in Captain McKay's affidavit that identify Sakthi employees as the source of stolen Sakthi products are not hearsay if offered to prove that the Detroit Police Department suspected Sakthi employees of theft because "[a] statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) (citation omitted). A statement identifying a Sakthi employee as a thief would cause the listener, Captain McKay, to suspect the identified person of being a thief. The statements are thus admissible to show that Captain McKay reasonably suspected Sakthi employees of participating in the thefts.

Mich. Aug. 19, 2010). But Travelers' only argument that Sakthi failed to prove there was no genuine issue of material fact about whether it suffered a loss due to employee theft was that the theft could only be proven by hearsay statements. *See* ECF 255, PgID 7491–94. And, as already explained, the hearsay statements are unneeded to prove the thefts. Indeed, Travelers did not oppose or even discuss Captain McKay's statements that she observed video footage of Sakthi employees stealing a truckload of goods. *See* ECF 253; 255; 257. Travelers failed "to introduce 'evidence of evidentiary quality' demonstrating the existence of a material fact." *Yopp*, 2010 WL 3272845, at *4 (citing *Bailey v. Floyd Cnty. Bd. of Educ.,* 106 F.3d 135, 145 (6th Cir. 1997). Because undisputed video evidence and Captain McKay's unrebutted affidavit show that Sakthi employees stole Sakthi goods, there is no genuine issue of material fact that Sakthi suffered a loss from employee theft. Sakthi is therefore entitled to summary judgment on the issue of liability. There is no genuine dispute that Sakthi suffered a covered loss and that Travelers breached the Crime Policy by refusing to pay the loss.

A final note. Had Travelers simply acceded to the undeniable, indisputable fact that Sakthi suffered a loss from employee theft, the Court long ago could have conducted a bench trial on the issue of how many thefts occurred and the amount of loss involved in them. Instead, by pressing a near frivolous argument to completely deny liability for the claim, Travelers inequitably prolonged the proceeding, denied the Receiver an opportunity to close out the Receivership estate and pay all creditors

in full, and kept the matter open on the public docket for close to a year longer than was legally necessary.

B.     *Separate Losses*

Travelers next argued that Sakthi "cannot meet its burden of demonstrating separate losses." ECF 255, PgID 7500. Under the Crime Policy, Sakthi may recover for every "single loss," which is defined as "an individual act, the combined total of a serious of acts, or a series of related acts, committed by an employee or committed by more than one employee acting alone or in collusion with other persons." ECF 252-16, PgID 6525 (alterations omitted). Because Sakthi claimed it suffered three distinct losses, it must show that each loss was committed by a different employee and that the employees were not acting in collusion with one another. *See id.* Travelers argued that there is a genuine issue of material fact about whether there was a single loss or three separate losses.

Sakthi responded that "Travelers blatantly ignores the undisputed evidence that Sakthi's property was stolen and that employees were involved in the separate and unrelated thefts." ECF 256, PgID 7670. But Sakthi cannot cite evidence which conclusively shows that it suffered three separate and distinct losses. *See id.* at 7670–73. The Receiver's argument that three recipients of stolen goods evidence three separate losses is viable, but there may well have been one theft of goods and three separate sales that landed the goods in different places. And Sakthi accurately quoted the Detroit Police Department's conclusion that "Sakthi parts were stolen from Sakthi and subsequently sold to three separate scrap businesses." *Id.* at 7670

14

(quoting ECF 252-4, PgID 6154). But the fact that stolen goods were sold to three separate scrap businesses does not resolve the genuine issue of material fact about whether the sellers worked together or alone. Indeed, while it appears that at least two of the scrap businesses purchased stolen Sakthi material from separate employees, *see* ECF 252-4, PgID 6148–53, that does not resolve the genuine issue of material fact about whether those employees worked together to *steal* the goods before separating to *sell* them. That separate employees each sold goods to three scrap business around the same time suggests a common scheme, but a trier of fact could still find that there was only one scheme. And Sakthi offered evidence that it suffered three separate losses, but it was disputable. *See id.* Consequently, although there is no genuine issue of material fact that Sakthi suffered a loss, there is a genuine dispute about whether Skathi suffered one, two, or three covered losses. Sakthi is therefore not entitled to summary judgment on its claim that it suffered three separate losses.

The matter in dispute, however, is the *amount* of damages owed, not *whether* damages are owed. Sakthi suffered a significant loss from employee theft, proved it, and is entitled to have its insured claim paid. Whether the overall loss stemmed from one, two, or three thefts is merely a question of how many damages Sakthi will receive, and not whether Travelers is obligated to pay for it under the contract, a fact that has already been proven.

C.    *Covered Loss Amount*

Travelers next argued that the Court should deny Sakthi summary judgment because "[t]here are no records to support a covered loss or loss amount." ECF 255, PgID 7494. The Court will not fully address Travelers' argument here because it mirrors the claim Travelers raised in its own motion for summary judgment. *See* ECF 253, PgID 6750. In brief, however, Travelers' argument fails because it ignores the thousands of pages of records and evidence Sakthi provided to show its damages. *See e.g.*, ECF 252-4; 252-5; 252-6; 252-7; 252-8; 252-9; 252-10; 252-11; 252-12; 252-13; 252-14; 252-15; 252-19; 252-20; 252-22; 252-23; 252-24; 252-25; ECF 253-22; 253-23; 253-24; 253-25; 253-26; 253-27; 253-28; 253-29. It is true that Sakthi cannot prove its losses with exactness because it cannot definitively establish whether it suffered a loss from one, two, or three employee theft schemes. But there is no genuine issue of material fact that Sakthi suffered *some* significant losses from employee crime.[4] Travelers' claim that Sakthi should be denied summary judgment because it provided

---

[4] Sakthi argued that "[e]ven if Sakthi provided no evidence of its costs, or the evidence is somehow considered insufficient, Michigan courts apply the 'broad evidence rule' to determine damages once it has determined that a loss occurred." ECF 256, PgID 7676; *see Miller v. Farm Bureau Mut. Ins. Co. of Mich.*, No. 325885, 2016 WL 4129165, at *3 (Mich. Ct. App. Aug. 2, 2016) ("A lack of precise proof of damages does not preclude recovery."). The Court is concerned about whether the broad evidence rule applies here because the evidence of damages is imprecise; indeed, it is not entirely clear whether Travelers breached the Crime Policy once, twice, or three times, or whether the policy allows Sakthi to recover as much as three million dollars or as little as one million dollars. *See* ECF 252-16, PgID 6509. The Court will set a bench trial on the question of whether the broad evidence rule allows the Court to rule as a matter of law on Sakthi's damages and, whether it does or not, how much those damages are.

16

"*no* records to support a covered loss or loss amount" is inapposite and fails; but the Court will nevertheless not enter summary judgment to Sakthi on the amount of loss because the Court cannot determine damages with certainty. ECF 255, PgID 7494 (emphasis added).

In sum, the Court will grant summary judgment to Sakthi on the issue of liability. Sakthi is entitled to summary judgment on its claim that Travelers breached the Crime Policy by refusing to pay on a covered loss. But a genuine issue of material fact about the amount of damages prevents the Court from granting Sakthi's motion in its entirety. Indeed, the Court cannot determine damages because it is unclear whether Sakthi suffered one, two, or three covered losses, and there is a genuine issue of material fact about the total amount of stolen goods as to one, or all three, losses. Consequently, the Court will grant Sakthi partial summary judgment on its Crime Policy claim. Travelers is liable to Sakthi for at least one breach of the Crime Policy as a matter of law. Whether Travelers is liable to Sakthi for up to three breaches of the Crime Policy is a question of fact for resolution at a bench trial. Likewise, the issue of overall damages is a question of fact not suitable for resolution at summary judgment.

II.    <u>Property Policy</u>

Sakthi moved for summary judgment on its claim that "Sakthi's claims are covered under . . . the Property Policy." ECF 252, PgID 6083. Sakthi argued that Travelers materially breached the Property Policy when it failed to provide coverage and "failed to distribute the insurance proceeds for losses sustained by Sakthi as a

result of the employee theft." ECF 239, PgID 5952. Travelers responded that because of "[t]he Receiver's consistent position" that employees stole property from Sakthi, the "claim under the Property Policy, which excludes coverage for employee theft," is eliminated. ECF 255, PgID 7503.

Under the Property Policy, Travelers insured Sakthi "for direct physical loss of or damage to covered property caused by or resulting from a covered cause of loss." ECF 252-17, PgID 6570 (alterations omitted). The Property Policy did not cover damages caused by "criminal act[s] by . . . employees." *Id.* at 6592.

The parties agreed that there was a valid, enforceable contract. *See* ECF 239, PgID 5952; ECF 240, PgID 6041. They disagreed on the issue of breach. Sakthi maintained that Travelers breached by refusing to pay on the Property Policy. *See* ECF 252, PgID 6084. Travelers argued that it had no duty to pay. *See* ECF 255, PgID 7503. The Court has already found that there is no genuine issue of material fact that Sakthi suffered losses because of the criminal acts of its employees. And as plainly stated in the Property Policy, damages caused by "criminal act[s] [of] . . . employees" are excluded from coverage. ECF 252-17, PgID 6592. The Court will therefore deny Sakthi's motion for summary judgment on the Property Policy claim and will grant summary judgment to Travelers that "Sakthi has not met its burden of demonstrating that insurance coverage for its [c]laim is available through the

Property Policy."[5] *See Travelers Cas. & Sur. Co. of Am.*, Case No. 2:22-cv-10637, ECF 1, PgID 13. Both Sakthi's and Travelers' claims about the Property Policy are resolved.

### III.    Travelers' Motion for Summary Judgment [253]

Travelers moved for summary judgment on two grounds: (1) that Sakthi breached the Crime Policy's record-keeping provision and (2) that the "claimed loss amount is based entirely on speculation." ECF 253, PgID 6750. For the reasons below, the Court will deny summary judgment on both grounds.

The first ground fails because the Crime Policy did not require Sakthi to retain all records. Under the Crime Policy, "Sakthi must keep records of all money, securities, and other property under the Crime Policy so Travelers can verify the amount of any loss." ECF 252-16, PgID 6533 (alterations omitted). Travelers claimed that Sakthi failed to fulfill the record-keeping requirement because it did not keep all records of its inventory and losses. *See* ECF 253, PgID 6768–72. Travelers described numerous inventory and financial documents that would have been useful to verify

---

[5] "After giving notice and a reasonable time to respond, the [C]ourt may . . . grant [a] motion [for summary judgment] on grounds not raised by a party." Fed. R. Civ. P. 56(f). Travelers did not move for summary judgment on the ground that they had no duty to perform under the Property Policy because of the crime exclusion. *See* ECF 253. But the Court may grant summary judgment to Travelers on that ground if Sakthi had "notice [of it] and a reasonable time to respond." Fed. R. Civ. P. 56(f). In its motion for summary judgment Sakthi admitted that "the Property Policy provides an exclusion for losses resulting from employee dishonesty or crimes." ECF 252, PgID 6094. And Sakthi argued that "*if* the Court determines that there is insufficient evidence to establish criminal employee involvement, *then* the claims must be covered under the Property Policy." *Id.* at 6107 (alterations omitted). Sakthi was thus on notice of the potential ground for summary judgment; indeed, Sakthi responded to the ground. *See id.* As a result, summary judgment under Rule 56(f)(2) is appropriate.

damages. *Id.* But the plain language of the contract does not clearly require Sakthi to maintain *all* records of *all* property. *See* ECF 252-16, PgID 6533 ("[Sakthi] must keep records of all money, securities, and other property under this crime policy so [Travelers] can verify the amount of any loss.") (alterations omitted). Indeed, the absence of a modifier before "records" suggests that the contract requires only an amount of records sufficient for Travelers to "verify the amount of any loss." *Id.* As explained above, Sakthi provided a virtual avalanche of records to support its claims and losses. *See e.g.*, ECF 252-4; 252-5; 252-6; 252-7; 252-8; 252-9; 252-10; 252-11; 252-12; 252-13; 252-14; 252-15; 252-19; 252-20; 252-22; 252-23; 252-24; 252-25; 253-22; 253-23; 253-24; 253-25; 253-26; 253-27; 253-28; 253-29. And Travelers never tried to argue that the myriad of records which Sakthi produced were insufficient to satisfy the contract requirement to produce mere "records of all . . . property" so that Travelers "can verify the amount of any loss." ECF 252-16, PgID 6533; *see* ECF 253, PgID 6768–72. Because the plain language of the Crime Policy did not require Sakthi to keep all its records and Sakthi provided many records to Travelers, Travelers' claim that it is not liable under the Crime Policy because Sakthi breached its duty to retain records fails.

Summary judgment is also inappropriate on the second ground Travelers raised because the claimed loss amount is not "based entirely on speculation." ECF 253, PgID 6750. The Court already found that there is no genuine issue of material fact that Sakthi suffered a covered loss because of criminal acts of its employees. And the Court found that there is an issue of fact about the amount owed to Sakthi.

20

Because the theft of *at least* one truckload of goods has been undisputedly proven by an unrebutted affidavit and video evidence, Sakthi's alleged losses are not based entirely on speculation. Besides, in Michigan "[a] lack of precise proof of damages does not preclude recovery." *Miller*, 2016 WL 4129165, at *3. Since Sakthi has proven a loss, the trier of fact "may consider 'any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property.'" *Id.* (quotation omitted). The Court will therefore deny Travelers' motion for summary judgment because both grounds raised lack merit.

With both motions for summary judgment resolved, nothing remains to be done on the case besides a bench trial[6] on whether Sakthi suffered one, two, or three losses and the damages Sakthi sustained as a result of those losses. Before setting a trial date, the Court will order the parties to brief two issues:

First, the parties must brief whether the Court should sanction Travelers and order them to pay Sakthi's attorney's fees because Travelers "cause[d] unnecessary delay" in the case by frivolously arguing that Sakthi did not suffer any loss from employee theft. Fed. R. Civ. P. 11(b)(1)–(2). The parties' briefs must also discuss whether sanctions are appropriate because this matter is one involving a Receivership and is therefore, by definition and contractual terms, an equitable action. Indeed, it appears that Travelers unduly prolonged the proceeding by raising

---

[6] A bench trial is proper in the case because neither party demanded a jury trial in the operative pleadings and "[i]ssues on which a jury trial is not properly demanded are to be tried by the [C]ourt." Fed. R. Civ. P. 39(b). *See Travelers Cas. & Sur. Co. of Am.* 2:22-cv-10637, ECF 1; ECF 239; 240.

plainly unmeritorious legal claims and that the Receiver and beneficiaries of his work have inequitably been denied final relief as a result. The parties must therefore brief the Court on whether sanctions are appropriate under Rule 11(b)(1)–(2) or whether the Court should, in equity, order Travelers to pay attorneys' fees to the Receiver for the time and work he spent in responding to their frivolous argument. The parties must submit the above-described briefs no later than September 15, 2023. The briefs must not exceed twelve pages, and no response is allowed.

Second, the parties must brief the Court on whether they seek to participate in a second settlement conference before the Magistrate Judge Anthony P. Patti to resolve the disputes between the parties before the Court conducts a bench trial, which of course would result an all-or-nothing, non-negotiable judgment. The parties must submit a joint status report no later than August 18, 2023 that states their willingness to participate in alternative dispute resolution with Magistrate Judge Anthony P. Patti and an anticipated timeline of when they will be prepared to engage in meaningful mediation.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment by Kevin English [252] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion for summary judgment by Travelers Casualty and Surety Company of America [253] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will **SET** a date for a bench trial to determine only whether Travelers Casualty and Surety Company of America and

Travelers Indemnity Company of America are liable for one, two, or three breaches of contract and the issue of damages.

**IT IS FURTHER ORDERED** that the parties must **SUBMIT** the above-described joint status report **no later than August 18, 2023**.

**IT IS FURTHER ORDERED** that the parties must **FILE** briefs simultaneously on **September 15, 2023** and **PRESENT** their positions on whether the Court should award attorneys' fees either in equity or under Rule 11. The briefs may not exceed twelve pages, and no response is allowed.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 10, 2023